# EXHIBIT 1

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. ___17-3663___

Michael Levesque, Executor of the ~~Estate of Maurice Levesque~~ , PLAINTIFFS(S),

V.

Lockheed Martin Corporation , DEFENDANT(S)

**SUMMONS**
Lockheed Martin Corporation

THIS SUMMONS IS DIRECTED TO _____ . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the ___Middlesex Superior___ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
    a.  Filing your signed **original** response with the Clerk's Office for Civil Business, ___Middlesex___ Court, 200 Trade Center, 2nd Floor Woburn, MA 01801 (address), by mail or in person, **AND**
    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: ___Shepard Law, P.C., 160 Federal Street, Boston, MA 02110___ .

3.  **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer.  If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____ , 20___ .

Michael A. Sullivan
Clerk-Magistrate

Note:  The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on_____ January 22 ____, 20 18 , I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

by certified mail, return receipt requested, pursuant to Mass. Gen. Laws ch. 223A, § 3

(the Massachusetts long-arm statute)

Dated:_____ January 22, ___, 20 18        Signature:_____

**N.B.**    **TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

January 22  , 20 18

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts SUPERIOR COURT DEPARTMENT County: **MIDDLESEX** | Docket Number 17-3663 |
|---|---|---|

| PLAINTIFF(S) Michael Levesque, Executor of the Estate of Maurice Levesque | DEFENDANT(S) A.W Chestor Co., et. al. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Michael e. Shepart, Esq. Shepart Law, P.C, 160 Federal Street, Boston MA Board of Bar Overseers number: 567842 | ATTORNEY (if known) |
|---|---|

### Origin code and track designation

Place an x in one box only:
[ x ] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial)       (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial)  (X)
[ ] 5. F05 Reactivated after rescript;relief from judgment/ Order (Mass.R.Civ.P. 60)                      (X)
[ ] 6. E10 Summary Process Appeal                          (X)

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B1a | Asbestos | (A) | (✓) Yes   ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.   Documented medical expenses to date:
    1. Total hospital expenses ........................................... $ Unknown
    2. Total Doctor expenses ............................................ $
    3. Total chiropractic expenses ...................................... $
    4. Total physical therapy expenses .................................. $
    5. Total other expenses (describe) .................................. $
                                                              Subtotal $
B.   Documented lost wages and compensation to date ..................... $
C.   Documented property damages to date ................................ $
D.   Reasonably anticipated future medical and hospital expenses ........ $
E.   Reasonably anticipated lost wages .................................. $
F.   Other documented items of damages (describe) ....................... $ 5,000,000
G.   Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                   $
                                                         TOTAL: $ 5,000,000

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

DEC 1 4 2017

CLERK

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                                                          TOTAL   $

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____                    DATE: 12/14/2017
A.O.S.C. 3-2007

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

_____ X

MICHAEL LEVESQUE, Executor of the
Estate of MAURICE LEVESQUE

      Plaintiff,

v.

CIVIL ACTION NO.
17-3663

A.W. CHESTERTON CO.
AVCO CORPORATION,
      Including its unincorporated division Lycoming Engines
BAYER CROPSCIENCE INC.,
      as corporate successor to Amchem Products, Inc.
CESSNA AIRCRAFT COMPANY,
      Individually and as Successor in Interest to McCauley Aircraft Products
CURTISS-WRIGHT CORPORATION
EATON AEROQUIP INC.,
      Individually and as successor-in-interest to Aeroquip Inc.,
GENERAL DYNAMICS CORPORATION,
      Individually and as Successor-in-interest to Aeroquip, Inc.
GENERAL ELECTRIC COMPANY
GOODRICH CORPORATION,
      Individually and as Successor in Interest to B.F. Goodrich Aerospace, The B.F. Goodrich
      Company, and Rohr Corporation
GULFSTREAM AEROSPACE CORPORATION
THE GOODYEAR TIRE & RUBBER COMPANY
HONEYWELL INTERNATIONAL INC.,
      f/k/a AlliedSignal, Inc., f/k/a The Bendix Corporation
IMO INDUSTRIES, INC., as successor in interest to Adel Fasteners
INGERSOLL-RAND COMPANY
LOCKHEED MARTIN CORPORATION
LYCOMING, A Textron Company
MEGGIT AIRCRAFT BREAKING SYSTEM
      f/k/a The Goodyear Tire & Rubber Co
NORTHROP GRUMMAN CORPORATION
PARKER-HANNIFIN CORPORATION
PNEUMO ABEX CORPORATION
ROLLS-ROYCE CORPORATION
TELEDYNE CONTINENTAL MOTORS, INC., n/k/a Continental Motors Inc

COMPLAINT
PLAINTIFF DEMANDS
A TRIAL BY JURY

UNION CARBIDE CORPORATION
UNITED TECHNOLOGIES CORPORATION

Defendants.

_____X

## PARTY PLAINTIFF

1.      The plaintiff Michael Levesque resides at ████████████████

████████████████████

## PARTY DEFENDANTS

2.      A. W. CHESTERTON CO. is a Massachusetts corporation with its principal place of

business at 225 Fallon Road, Stoneham, MA, 02180.

AVCO CORPORATION, as Successor-in-Interest to Spencer Boiler, is a Delaware

corporation with its principal place of business at 40 Westminster Street, Providence, Rhode

Island, 02903.  AVCO CORPORATION, as Successor-in-Interest to Spencer Boiler has

conducted business in and has derived substantial revenue from the Commonwealth of

Massachusetts.

BAYER CROPSCIENCE, INC., Successor in interest to Amchem Products, Inc. is a

Delaware corporation with its principal place of business at 2 T.W. Alexander Drive, Research

Triangle Park, North Carolina, 27709.  BAYER CROPSCIENCE, INC., Successor in interest to

Amchem Products, Inc., has conducted business in and has derived substantial revenue from the

Commonwealth of Massachusetts.

CESSNA AIRCRAFT COMPANY, Individually and as Successor in Interest to

McCauley Aircraft Products is a Kansas corporation with its principal place of business at 5800

East Pawnee Road, Wichita, KS 67218.  CESSNA AIRCRAFT COMPANY, Individually and as

2

Successor in Interest to McCauley Aircraft Products has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

CURTISS-WRIGHT CORPORATION is a Delaware corporation with its principal place of business at 10 Waterview Blvd., 2nd Floor, Parsippany, NJ 07054. CURTISS-WRIGHT CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

EATON AEROQUIP INC., individually and as successor-in-interest to Aeroquip Inc., is a Michigan corporation with its principal place of business at Eaton Center, 1111 Superior Ave, Cleveland, OH 44114. EATON AEROQUIP INC., individually and as successor-in-interest to Aeroquip Inc., may be served through their Registered Agent, CT Corporation Systems, 101 Federal Street, Boston, MA, 02110. EATON AEROQUIP INC., has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

GENERAL DYNAMICS CORPORATION, Individually and as Successor-in-interest to Aeroquip, Inc. is a Delaware corporation with a registered agent listed at Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801. GENERAL DYNAMICS CORPORATION, Individually and as Successor-in-interest to Aeroquip, Inc has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts. Upon Information and Belief, GENERAL DYNAMICS CORPORATION owns the liabilities for Convair Aircraft.

GENERAL ELECTRIC CO. is a New York corporation with its principal place of business at 1 River Road, Schenectady, NY, 12345. GENERAL ELECTRIC CO. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

GOODRICH CORPORATION, individually and as successor-in-interest to B.F.

Goodrich Aerospace and the B.F. Goodrich Company is a New York Corporation with its

principal place of business at 2730 West Tyvola Road, Charlotte, NC 28217. GOODRICH

CORPORATION, f/k/a The B.F. Goodrich Company has conducted business in and has derived

substantial revenue from the Commonwealth of Massachusetts.

GULFSTREAM AEROSPACE CORPORATION is a Georgia corporation with its

principal place of business at 500 Gulfstream Road, Savannah, Georgia, 31408. GULFSTREAM

AEROSPACE CORPORATION has conducted business in and has derived substantial revenue

from the Commonwealth of Massachusetts.

THE GOODYEAR TIRE & RUBBER COMPANY is a Ohio corporation with its

principal place of business at 1144 E. Market Street, Akron, OH 44316. THE GOODYEAR

TIRE & RUBBER COMPANY has conducted business in and has derived substantial revenue

from the Commonwealth of Massachusetts.

HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal, Inc., f/k/a The Bendix

Corporation, is a Delaware corporation with its principal place of business at 101 Columbia

Road, Morristown, NJ, 07962. HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal,

Inc., f/k/a The Bendix Corporation, has conducted business in and has derived substantial

revenue from the Commonwealth of Massachusetts.

IMO INDUSTRIES, INC., as successor-in-interest to Adel Fasteners, is a Delaware

corporation with its principal place of business at 1009 Lenox Dr., BLDG 4 West, Lawrenceville,

NJ 08648. IMO INDUSTRIES, INC. has conducted business in and has derived substantial

revenue from the Commonwealth of Massachusetts.

4

INGERSOLL-RAND COMPANY is a New Jersey corporation with its principal place of business at 200 Chestnut Ridge Road, Woodcliff, NJ, 07675. INGERSOLL-RAND COMPANY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

LOCKHEED MARTIN CORPORATION is a Marylandcorporation with its principal place of business at 6801 Rockledge Drive, Bethesda, MD 20817. LOCKHEED MARTIN CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

LYCOMING, A Textron Company is a Pennsylvania corporation with its principal place of business located in the state of Pennsylvania. LYCOMING, A Textron Company has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

MEGGIT AIRCRAFT BREAKING SYSTEM f/k/a The Goodyear Tire & Rubber Co. is a Ohio corporation with its principal place of business at 1204 Massillon Road Akron, Ohio, 44306. MEGGIT AIRCRAFT BREAKING SYSTEM f/k/a The Goodyear Tire & Rubber Co. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

NORTHROP GRUMMAN CORPORATION is, upon information and belief, a corporation with its principal place of business at 1840 Century Park East, Los Angeles, CA, 90067. NORTHROP GRUMMAN has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

PARKER-HANNIFIN CORPORATION, as successor to EIS Automotive Corporation is an Ohio corporation with its principal place of business at 6035 Parkland

5

Boulevard, Cleveland, OH, 44124.  PARKER-HANNIFIN CORP. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

PNEUMO ABEX CORPORATION is a Delaware corporation with its principal place of business at Third Street and Jefferson Avenue, Camden, NJ, 08104.

ROLLS-ROYCE CORPORATION is a Delaware corporation with its principal place of business at 2355 S. Tibbs Ave, Indianapolis, IN 46241.  ROLLS-ROYCE CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

TELEDYNE CONTINENTAL MOTORS, INC., n/k/a Continental Motors Inc., is a Delaware Corporation with its principal place of business outside the state of Massachusetts. TELEDYNE CONTINENTAL MOTORS, INC., n/k/a Continental Motors Inc. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

UNION CARBIDE CORPORATION is a New York corporation with its principal place of business at Old Ridgebury Road, Danbury, CT, 06817.  UNION CARBIDE CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

UNITED TECHNOLOGIES CORPORATION, Individually and for its unincorporated division Pratt & Whitney Co., Inc. is a Delaware corporation with its principal place of business at 400 Main Street, East Hartford, CT 06108.  UNITED TECHNOLOGIES CORPORATION, Individually and for its unincorporated division Pratt & Whitney Co., Inc. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

As used in this Complaint, the terms "defendant," "defendants" or "defendant corporations" shall include the party defendants identified in paragraphs 2, and their predecessors and successors, which shall include, but is not limited to, any person, corporation, company or business entity which formed part of any combination, consolidation, merger or reorganization from which any party defendant was created or was the surviving corporation or other entity, or into which any party defendant was merged, consolidated or reorganized; whose assets, stock, property, employees, customers, good will, products or product line was acquired by or from any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was acquired by or from any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

3.      The Plaintiff's cause of action arises from the defendant: (a) transacting business in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a tortious act to occur within Massachusetts.

**FACTUAL BACKGROUND**

4.      Plaintiff-decedent MAURICE LEVESQUE worked at various commercial job sites from the 1940s to the 1970s. Plaintiff worked continuously around the defendants' asbestos and asbestos-containing products during the course of his employment.

5.      During the period of time set forth in Paragraph 4, Plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos and asbestos-containing products which were mined, milled, manufactured, fabricated, contracted, supplied, distributed and/or sold by the defendant corporations.

7

6.      The asbestos and asbestos-containing products to which Plaintiff was exposed were mined, milled, manufactured, fabricated, contracted, supplied, distributed and/or sold by the defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants.

7.      At all times pertinent hereto, the defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, contracting, supplying, distributing, and/or selling asbestos and asbestos-containing products.

8.      At all times pertinent hereto, the asbestos products were products mined, milled, manufactured, fabricated, contracted, supplied, distributed and/or sold by the defendant corporations and reached Plaintiff without any substantial change in the condition of the product or products from the time that they were sold.

9.      As a direct and proximate result of working with, around, and/or near asbestos materials mined, milled, manufactured, tested, furnished, packaged, contracted, distributed, delivered, sold and otherwise placed in the stream of commerce by the defendants, Plaintiff developed an asbestos-related cancer. He suffered serious personal injuries, endured great pain of body and mind, suffered severe mental anguish and distress, had been prevented from transacting his business, had been required to undergo medical treatment, care and expense. His earning capacity had been greatly impaired. Further, his next of kin have been deprived of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

## DISCLAIMER OF FEDERAL JURISDICTION

10.     Plaintiff specifically disclaims any federal cause of action or any claim that would give rise to federal jurisdiction. To the extent that any of Plaintiff's asbestos exposure took place on a federal enclave, or to the extent that any of Plaintiff's asbestos exposure occurred on board vessels of the United States military (including Naval ships) or in the construction, maintenance and/or repair of United States military vessels and/or aircraft, Plaintiff's negligence claims against manufacturers, sellers and suppliers of asbestos-containing products installed on such vessels and/or aircraft are not based on the theory of defective design, but rather are based only on the theory of failure to warn. Since there is no evidence that the United States Government, or any of its military branches, specifically instructed manufacturers from which it purchased asbestos-containing products not to warn about the health hazards associated with exposure to asbestos, there can be no valid claim to federal jurisdiction pursuant to federal enclave, federal officer or federal contractor provisions of the United States Code. This disclaimer pertains to all of Plaintiffs' claims, including those of negligence and products liability, as asserted herein.

## COUNT I

## NEGLIGENCE

## (CONSCIOUS PAIN AND SUFFERING)

11.     The Plaintiff incorporates by reference paragraphs 1 through 10 above as if expressly alleged and set forth herein.

12.     It was the duty of the defendant corporations to use and exercise reasonable and due care in the manufacture, fabrication, testing, inspection, production, marketing, packaging, contracting, distribution and sale of its asbestos and asbestos-containing products.

13.     It was also the duty of the defendant corporations to provide detailed and adequate instructions relative to the proper and safe handling and use of their asbestos and asbestos-

9

containing products, and to provide detailed and adequate warnings concerning any and all

dangers, characteristics, and potentialities of their asbestos and asbestos-containing products.

14.     It was the continuing duty of the defendant corporations to advise and warn

purchasers, consumers, users, and prior purchasers, prior consumers, and prior users of all

dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing

or sale of their asbestos and asbestos-containing products.

15.     Yet, nevertheless, wholly disregarding the aforesaid duties, the defendant

corporations breached their duties by: (a) failing to warn Plaintiff of the dangers, characteristics,

and potentialities of their asbestos-containing products when the defendant corporations knew or

should have known that exposure to their asbestos-containing products would cause disease and

injury; (b) failing to warn Plaintiff of the dangers to which he was exposed when they knew or

should have known of the dangers; (c) failing to exercise reasonable care to warn Plaintiff of

what would be safe, sufficient, and proper protective clothing, equipment, and appliances when

working with or near or being exposed to their asbestos and asbestos-containing products; (d)

failing to provide safe, sufficient and proper protective clothing, equipment and appliances with

their asbestos and asbestos-containing products; (e) failing to test its asbestos and asbestos-

containing products in order to ascertain the extent of danger involved upon exposure thereto; (f)

failing to conduct such research as should have been conducted in the exercise of reasonable

care, in order to ascertain the dangers involved upon exposure to their asbestos and asbestos-

containing products; (g) failing to remove the product or products from the market when the

defendant corporations knew or should have known of the hazards of exposure to their asbestos

and asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and

potentialities of exposure to asbestos to adequately warn and apprise Plaintiff of said dangers,

10

hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards, and potentialities; and (j) generally using unreasonable, careless, and negligent conduct in the manufacture, fabrication, supply, and/or sale of their asbestos and asbestos-containing products. See also Disclaimer of Federal Jurisdiction, above.

16.    As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporations, Plaintiff developed an asbestos-related disease. He suffered and will continue to suffer serious personal injuries, endure and continue to endure severe pain of body and mind until death. He and his family have incurred substantial medical expenses in connection with the treatment of his asbestos-related disease. His earning capacity was greatly impaired. Further, his next of kin were deprived of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

17.    The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

WHEREFORE, Plaintiff demands judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## COUNT II

## BREACH OF EXPRESS AND IMPLIED WARRANTIES

18.    The Plaintiff incorporates by reference paragraphs 1 through 17 above as if expressly alleged and set forth herein.

19.    Plaintiff is a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the

11

meaning of Massachusetts General Laws c. 106, secs. 2-314 and 2-318, as the defendants knew or had reason to know that their asbestos and asbestos-containing products would be used in the insulation or construction industry and that individuals such as Plaintiff would come in contact with such asbestos materials.

20.     The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary purposes, and the particular purposes and requirements of Plaintiff.

21.     The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

22.     Plaintiff relied upon the defendants' skill or judgment in selecting suitable construction products for safe use.

23.     The defendants breached these warranties, in that the asbestos and asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes. See also Disclaimer of Federal Jurisdiction, above.

24.     As a direct and proximate result of the defendants' breach of warranties, Plaintiff contracted developed an asbestos-related cancer. He suffered serious personal injuries, endured and will continue to endure severe pain of body and mind until death. He and his family have incurred substantial medical expenses in connection with the treatment of his asbestos-related disease. His earning capacity was greatly impaired. Further, his spouse and next of kin were deprived of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

WHEREFORE, Plaintiff demands judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

12

## COUNT III

### CONSPIRACY OR CONCERT OF ACTION: METROPOLITAN ONLY

25.     The Plaintiff incorporates by reference paragraphs 1 through 24 above as if expressly alleged and set forth herein.

26.     In addition, during the time period set forth in Paragraph 4, the Plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos or asbestos-containing products which were mined, milled, manufactured, fabricated, supplied, and/or sold by the Johns Manville Corporation (hereinafter 'Manville') and/or Raymark Industries, Inc. (hereinafter 'Raymark).

27.     The defendant, Metropolitan Life Insurance Company, (hereinafter 'Metropolitan') together with Manville, Raymark and other persons and entities, known and unknown at times relevant hereto, engaged in a conspiracy or concert of action to inflict injury on the Plaintiff, and to withhold, alter, suppress and misrepresent information about the health effects of asbestos exposure. One or more of said conspirators did cause tortious injury to the Plaintiff in the course of or as a consequence of the conspiracy or concert of action. At least the following enumerated acts were undertaken by the conspirators in the course of and in furtherance of the conspiracy or concert of action.

a.      In 1932, Metropolitan, through its agents, Dr. Anthony Lanza and others, assisted Manville with medical examinations of over 1,000 employees of Manville's factory in Manville, New Jersey. The report of this study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and,

13

therefore, was unavailable to scientists studying the issue of asbestos

related disease. Further collaboration between Manville and Metropolitan

continued the cover-up.

b.  Beginning in approximately 1934, Manville, through its agents, Vandiver

Brown and Attorney J.C. Hobart, suggested to Dr. Anthony Lanza,

Associate Director of Metropolitan, (insurer of Manville and Raymark)

that Lanza publish a study on asbestosis in which Lanza would

affirmatively misrepresent material facts about the health consequences of

asbestos exposure. This was accomplished through intentional deletion of

Lanza's description of asbestosis as 'fatal' and through other selective

editing that affirmatively misrepresent asbestosis as a disease process less

serious than it actually is and was known to be. As a result, Lanza's study

was published in the medical literature in this misleading fashion in 1935.

The conspirators were motivated, in part, to effectuate this fraudulent

misrepresentation and fraudulent nondisclosure by the desire to influence

proposed legislation to regulate asbestos exposure and to provide a

defense in lawsuits involving Manville, Raymark, and Metropolitan, as

insurer. Furthermore, upon information and belief, it is alleged that

Metropolitan, at all times relevant hereto, had substantial monetary

investments in Manville and Raymark, among other asbestos product

manufacturers and distributors.

c.  In 1936, the conspirators or some of them, including Manville, Raymark,

and other companies entered into an agreement with the Saranac

14

Laboratories in New York. Under this agreement, these conspirators acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and to control in what form such publications would occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

d.      By November 1948, or earlier, Manville, Metropolitan (acting through Dr. Lanza), Raymark, and others decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos products.

e.      At a meeting on November 11, 1948, these conspirators and others intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensities of asbestos and the health effects of asbestos on humans and they determined that only an edited version would be published. These

15

conspirators thereby fraudulently misrepresented the risks of asbestos

exposure to the public, in general, and to the class of persons exposed to

asbestos, including the Plaintiff.

f.      As a direct result of influence exerted by the above described conspirators,

Dr. Arthur Vorwald published Dr. Gardner's edited work in the <u>Journal of</u>

<u>Industrial Hygiene, AMA Archives of Industrial Hygiene and</u>

<u>Occupational Health</u>  in 1951 in a form that stressed those portions of Dr.

Gardner's work that the conspirators wished stressed, but which omitted

references to human asbestosis and cancer, thereby fraudulently and

affirmatively misrepresenting the extent of the risks.  The conspirators

affirmatively and deliberately disseminated this misleading Vorwald

publication to universities, libraries, government officials, agencies and

others.

g.      Such action constituted a material affirmative misrepresentation of the

material facts involved in Dr. Gardner's work and resulted in creating an

appearance that inhalation of asbestos was a less serious health concern

than Dr. Gardner's unedited work indicated.

28.      Plaintiff further alleges that Metropolitan, Manville, Raymark, and/or their

predecessors in interest knowingly agreed, contrived, combined, confederated, and conspired

among themselves to cause Plaintiff injuries, diseases, and/or illnesses by exposing Plaintiff to

harmful and dangerous asbestos-containing products and/or machinery  requiring or calling for

the use of asbestos and/or asbestos-containing products.  Metropolitan, Manville, and Raymark

further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff

16

of the opportunity of informed free choice as to whether to use said asbestos containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers. In this connection, Plaintiff has sued the Metropolitan Life Insurance Company in its capacity and because it committed tortious act in concert with others pursuant to a common design. Metropolitan, Manville, and Raymark committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Manville's and/or Raymark's asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

29.     In furtherance of said conspiracies, Metropolitan, Manville, and Raymark performed the following overt acts:

a.      for many decades, Metropolitan, individually, jointly and in conspiracy with Manville and Raymark, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b.      despite the medical and scientific data, literature and test reports possessed by and available to Metropolitan, individually and in conspiracy with Manville and Raymark, fraudulently, willfully and maliciously:

17

(i)    withheld, concealed and suppressed said medical and scientific

data, literature and test reports regarding the risks of asbestosis,

cancer, mesothelioma, and other illnesses and diseases from

Plaintiff who using and being exposed to Manville or Raymark

asbestos-containing products  and/or machinery requiring or calling

for the use of asbestos and/or asbestos-containing products;

(ii)    caused to be released, published and disseminated medical and

scientific data, literature and test reports containing information

and statements regarding the risks of asbestosis, cancer,

mesothelioma and other illnesses and diseases, which

Metropolitan, Manville and Raymark knew were either incorrect,

incomplete, outdated and misleading; and

(iii)    distorted the results of medical examinations conducted upon

workers such as Plaintiff who were using asbestos-containing

products and/or machinery requiring or calling for the use of

asbestos and/or asbestos-containing products and being exposed to

the inhalation of asbestos dust and fibers by falsely stating and/or

concealing the nature and extent of the harm to which workers

such as Plaintiff has suffered; and

(iv)    failing to adequately warn the Plaintiff of the dangers to which he

was exposed when they knew of the dangers.

c.    by the false and fraudulent representations, omissions, failures, and

concealments set forth above, Metropolitan, Manville and Raymark,

18

individually, jointly, and in conspiracy with each other, intended to induce
the Plaintiff to rely upon said false and fraudulent representations,
omissions, failures, and concealments, to continue to expose themselves to
the dangers inherent in the use of and exposure to their asbestos
containing products and/or machinery requiring or calling for the use of
asbestos and/or asbestos-containing products.

Said misrepresentations were false, incomplete, and misleading and constitute negligent misrepresentations as defined by Sections 311 and 522 of the Restatement (Second) of Torts.

30.     Plaintiff reasonably and in good faith relied upon the false and fraudulent representations, omissions, failures, and concealments made by Metropolitan, Manville, and Raymark regarding the nature of their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

31.     As a direct and proximate result of the conspiracy and concert of action between Metropolitan, Manville and Raymark, the Plaintiff has been deprived of the opportunity of informed free choice and connection with the use of and exposure to Manville and Raymark's asbestos and asbestos-containing products, and therefore continued to work with and be exposed to the co-conspirator corporation's asbestos and asbestos-containing products and as a result contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the Plaintiff has suffered a dramatic reduction of his life expectancy, incurred great mental and physical pain and suffering, sustained lost wages and lost earning capacity, incurred medical expenses, and their enjoyment of life has been greatly impaired, which damages are continuing in nature.

WHEREFORE, Plaintiff demands compensatory damages, plus interest and costs.

19

## COUNT IV

## UNDERTAKING OF SPECIAL DUTY: METROPOLITAN ONLY

32.     The Plaintiff incorporates by reference paragraphs 1 through 31 above as if expressly alleged and set forth herein.

33.     Defendant Metropolitan, through its Policymakers Service Bureau, undertook duties owed by entities which manufactured, sold, supplied, or distributed asbestos-containing products, including Manville and Raymark to Plaintiff by testing of asbestos workers and the conduct of scientific studies.  These duties included, without limitation, as follows:

   a.     to test fully and adequately for health risks concomitant to the normal and
   intended use of their products; and

   b.     to instruct fully and adequately in the use of their products so as to
   eliminate or reduce health hazards concomitant with their normal or
   intended use.

In undertaking these duties, Metropolitan knew or should have known that it was providing testing services for the ultimate protection of third persons, including the Plaintiff.

34.     In both conducting said tests and publishing their alleged results, Metropolitan failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos.  Metropolitan also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure. In so acting, Metropolitan breached their special responsibility by failing to exercise reasonable care to protect their undertaking, as described above.

20

35.     The Plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan's tests and information dissemination, the results of which Metropolitan published in leading medical journals.

36.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with entities which manufactured, sold, supplied, or distributed asbestos-containing products, including Manville and Raymark, to understate the hazards of asbestos exposure, all for pecuniary profit and gain, Metropolitan acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Plaintiff.

37.     As a direct and proximate result of Metropolitan's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to the Plaintiff from asbestos exposure was increased, and (ii) Plaintiff contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the Plaintiff has suffered dramatic reduction of their life expectancy, incurred great mental and physical pain and suffering, sustained lost wages and lost earning capacity, incurred medical expenses, and their enjoyment of life has been greatly impaired, which damages are continuing in nature.

WHEREFORE, Plaintiff demands compensatory damages, plus interest and costs.


## COUNT VII

## NEGLIGENCE

21

## (WRONGFUL DEATH)

38.    The Plaintiff incorporates by reference paragraphs 1 through 37 above as if expressly alleged and set forth herein.

39.    As a direct and proximate result of the unreasonable, careless and negligent conduct of the defendant corporations, the next of kin of Plaintiff incurred funeral and burial expenses and were deprived of the decedent's care, comfort, society, companionship, advice, assistance, services, protection, counsel and advice.

40.    This count for death is brought by the representative of the estate for use of the next of kin of the decedent.

WHEREFORE, the Plaintiff demands judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## COUNT VIII

## PUNITIVE DAMAGES

41.    The Plaintiff incorporates by reference paragraphs 1 through 40 above as if expressly alleged and set forth herein.

42.    As early as 1929, the defendants, or some of them, possessed medical and scientific data clearly indicating that asbestos and asbestos-containing products were hazardous to the health and safety of Plaintiff decedent, and others in his position.

43.    The defendants, or some of them, during the 1930's, 1940's, 1950's and 1960's became possessed of voluminous medical and scientific data, studies, and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of Plaintiff decedent and all other persons exposed to the products.

44.     The defendants, or some of them, since the 1930's have had numerous workers' compensation claims filed against them by the former asbestos workers or employees, or knew such claims were filed against asbestos product suppliers and manufacturers. Prompted by pecuniary motives, the defendants ignored and failed to act upon such medical and scientific data and conspired to deprive the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of the free choice as to whether or not to expose themselves to the asbestos and asbestos-containing products of the defendants.

The defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, by continuing to market their asbestos products, with reckless disregard for the health and safety of Plaintiff decedent, and other users or consumers, knowing the dangerous characteristics and propensities of said asbestos products, but still depriving those affected by the dangers from information about those dangers.

45.     Because the defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence in marketing their hazardous asbestos or asbestos-containing products, in ignoring the medical and scientific data which was available to them, and depriving consumers, users and the general public from that medical and scientific data, the Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands judgment against the defendants for punitive damages pursuant to Mass. Gen. Laws c. 229, § 2.

23

## DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands a trial by jury on each claim asserted or hereafter asserted

by the Plaintiff and on each defense asserted or hereafter asserted by the defendants.

Respectfully submitted,
The Plaintiff,
By his attorney,

Dated: 12/14/17

Michael O. Shepard, Esq.
B.B.O. No. 567842
Erika A. O'Donnell, Esq.
B.B.O. No. 661534
Michael J. McCann, Esq.
BBO No. 690542
Shepard Law, P.C.
160 Federal Street
Boston, MA 02110
(617) 451-9191

24

# EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS

E-SERVICE
62769220
Dec 14 2018
01:00PM
File & ServeXpress

MIDDLESEX, SS.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

|  |  |
|---|---|
| MICHAEL LEVESQUE, Executor of the Estate of MAURICE LEVESQUE | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| A.W. Chesterton Co., et al., | |
| Defendants. | |

CIVIL ACTION NO.
17-3663

# **PLAINTIFF'S DISCLOSURE FORM**

Michael C. Shepard
BBO No. 567842
Erika A. O'Donnell
BBO No. 661534
Shepard Law, P.C.
160 Federal Street
Boston, MA  02110
(617) 451-9191

# I.  IDENTIFICATION OF PLAINTIFF/DEPENDENTS

| PLAINTIFF INFORMATION | |
|---|---|
| **Name:** | Maurice R. Levesque |
| **Social Security No.:** | |
| **Address:** | |
| **Date of Birth:** | |
| **Sex:** | Male |
| **Marital Status:** | Widow |

| SPOUSAL INFORMATION | |
|---|---|
| **Name:** | Jeanne Levesque |
| **Address:** | |
| **Date of Birth:** | N/A |
| **Date of Marriage:** | N/A |

| DEPENDENTS | |
|---|---|
| **Names:** | N/A |
| **Dates of Birth:** | N/A |
| **Relationship:** | N/A |

| DEATH CASE INFORMATION | |
|---|---|
| **Date of Death:** | 09/20/2017 |
| **Residence at Death:** | |
| **Cause of Death:** | Lung Cancer |
| **Autopsy:** | None |

2

# II.  ASBESTOS-RELATED CONDITIONS

| LUNG CANCER | |
|---|---|
| **Description/Symptoms:** | Lung Cancer |
| **Physician and Hospital:** | Dr. Scott Henderson (PCP) – Hawthorne Medical Associates: North Dartmouth, MA; Dr. Curtis Mello: North Dartmouth, MA; Dr. Elliot Anderson: North Dartmouth, MA; Dr. Michael Berriti: Fairhaven, MA. |
| **Date of Onset of Symptoms:** | February, 2017 |
| **Date of Diagnosis:** | March 6, 2017 |

## III.  SMOKING HISTORY

| | |
|---|---|
| **Was the Plaintiff ever a smoker?** | Yes, Plaintiff smoked from approximately 1944 until 1977. |
| **Did the Plaintiff smoke cigarettes?** | Yes, Plaintiff smoked 3 packs per day of Paul Mall cigarettes. |
| **Did the Plaintiff smoke cigars?** | No, Plaintiff did not smoke cigars. |
| **Did the Plaintiff smoke a pipe?** | No, Plaintiff did not smoke a pipe. |

## IV.  EMPLOYMENT AND DISABILITY INFORMATION

| | |
|---|---|
| **Is Plaintiff currently employed?** | No, Plaintiff is not currently employed. |
| **Is Plaintiff retired?** | No, Plaintiff is deceased. |
| **Is Plaintiff looking for employment?** | No. |
| **Is Plaintiff disabled?** | Yes, Plaintiff is permanently disabled. |
| **State whether total or partial disability:** | Plaintiff is permanently disabled. |
| **State nature and extent of disability:** | Plaintiff suffered greatly as a result of Lung Cancer |
| **State cause of disability:** | Lung Cancer |
| **State dates of disability:** | February 2017 to the present |

# V.  PLAINTIFF PRODUCT IDENTIFICATION/EXPOSURE

| NAME:  MAURICE LEVESQUE | CIVIL ACTION NO.:  17-3663 |
|---|---|

| EXPOSURE SITES #1 | |
|---|---|
| **Employer:** | Narragansett Airways (1951-1955) |
| **Jobsite/Exposure Site:** | Narragansett Airways: New Bedford, MA |
| **Duties at Exposure Site:** | Laborer, Pilot, Aviation Mechanic |
| **New Construction or Repair:** | New Construction and Repair |

| EXPOSURE SITES #2 | |
|---|---|
| **Employer:** | Northeast Airlines, Inc. (1956-1959) |
| **Jobsite/Exposure Site:** | Northeast Airlines, Inc.: Boston, MA |
| **Duties at Exposure Site:** | Laborer, Mechanic |
| **New Construction or Repair:** | New Construction and Repair |

| EXPOSURE SITES #3 | |
|---|---|
| **Employer:** | Gillette Corp. (1959-1964) |
| **Jobsite/Exposure Site:** | Gillette Corp. |
| **Duties at Exposure Site:** | Laborer, Aviation Mechanic |
| **New Construction or Repair:** | New Construction and Repair |

| EXPOSURE SITES #4 | |
|---|---|
| **Employer:** | ITT Corporation (1965-1979) |
| **Jobsite/Exposure Site:** | ITT Corporation: West Harrison, NY |
| **Duties at Exposure Site:** | Laborer, Aviation Mechanic |
| **New Construction or Repair:** | New Construction and Repair |

| A. W. CHESTERTON CO. | |
|---|---|
| **Defendant:** | A.W. Chesterton Co. |
| **Defendant Status:** | Manufacturer and Seller |
| **Product Type:** | asbestos-containing packing; asbestos-containing gaskets; and other asbestos-containing products |
| **Brand Name:** | Chesterton and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| AVCO CORPORATION | |
|---|---|
| **Defendant:** | AVCO Corporation, Including its unincorporated division Lycoming Engines |
| **Defendant Status:** | Manufacturer, Distributor, Supplier, and Seller |
| **Product Type:** | asbestos-containing friction materials, asbestos-containing components, and asbestos-containing insulation products incorporated for use in private aircraft; asbestos-insulated aircraft engines and other asbestos-containing component parts |
| **Brand Name:** | Stinson aircraft, Lycoming engines, and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| BAYER CROPSCIENCE, INC. | |
|---|---|
| **Defendant:** | Bayer Cropscience, Inc., as corporate successor to Amchem Products, Inc. |
| **Defendant Status:** | Manufacturer, Seller and Distributor |
| **Product Type:** | asbestos-containing sealants; asbestos-containing coatings; asbestos-containing fibrous adhesives; and other asbestos-containing products |
| **Brand Name:** | Benjamin Foster and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>   Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>   Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

8

| CESSNA AIRCRAFT COMPANY | |
|---|---|
| **Defendant:** | Cessna Aircraft Company, Individually and as Successor in Interest to McCauley Aircraft Products |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | asbestos-containing aircraft, asbestos-containing friction materials, asbestos-containing components, asbestos-containing brake assemblies, and asbestos-containing insulation products incorporated for use in private aircraft |
| **Brand Name:** | Cessna, McCauley and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| CURTISS-WRIGHT CORPORATION | |
|---|---|
| **Defendant:** | Curtiss-Wright Corporation |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | asbestos-containing aircraft engines, asbestos-containing components (such as gaskets, clamps, and others), and asbestos-containing insulation products incorporated for use in aircraft |
| **Brand Name:** | Wright and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>   Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>   Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| EATON CORPORATION | |
|---|---|
| **Defendant:** | Eaton Corporation |
| **Defendant Status:** | Manufacturer, and Seller |
| **Product Type:** | asbestos-containing automotive parts including brakes, clutches, and various other asbestos-containing products. |
| **Brand Name:** | Various |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| GENERAL DYNAMICS CORPORATION | |
|---|---|
| **Defendant:** | General Dynamics Corporation, Individually and as Successor in Interest to Convair |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | Aircraft that incorporated asbestos-containing friction materials, asbestos-containing components, asbestos-containing brakes and asbestos-containing insulation products incorporated for use in its aircraft |
| **Brand Name:** | Convair and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>   Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>   Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| GENERAL ELECTRIC COMPANY | |
|---|---|
| **Defendant:** | General Electric Company |
| **Defendant Status:** | Manufacturer and Seller |
| **Product Type:** | asbestos-containing turbines, motors, electrical components, valves, and other asbestos-containing products |
| **Brand Name:** | GE and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| GOODRICH CORPORATION | |
|---|---|
| **Defendant:** | Goodrich Corporation, individually and as successor in interest to B.F. Goodrich Aerospace, The B.F. Goodrich Company, and Rohr Corporation |
| **Defendant Status:** | Manufacturer, Supplier and Seller |
| **Product Type:** | asbestos-containing aircraft brake assemblies and asbestos-containing molded friction materials, including but not limited to asbestos-containing brake block, asbestos-containing drum lining, asbestos-containing disc pads, asbestos-containing clutch facings; and other asbestos-containing products |
| **Brand Name:** | Various |
| **Specific Location of Exposure:** | See above jobsites. |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| GULFSTREAM AEROSPACE CORPORATION | |
|---|---|
| **Defendant:** | Gulfstream Aerospace Corporation |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | asbestos-containing aircraft engines and other asbestos-containing component parts (such as gaskets, clamps and others) |
| **Brand Name:** | Various |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

15

| THE GOODYEAR TIRE & RUBBER COMPANY | |
|---|---|
| **Defendant:** | The Goodyear Tire & Rubber Company |
| **Defendant Status:** | Manufacturer, Supplier and Seller |
| **Product Type:** | asbestos-containing gaskets, asbestos-containing aircraft brake assemblies, asbestos-containing molded friction materials including, but not limited to, asbestos-containing brake block, asbestos-containing drum lining, asbestos-containing disc pads, asbestos-containing clutch facings; and other asbestos-containing products |
| **Brand Name:** | Various |
| **Specific Location of Exposure:** | See above jobsites. |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| HONEYWELL INTERNATIONAL INC. | |
|---|---|
| **Defendant:** | Honeywell International Inc., f/k/a Allied Signal, Inc., f/k/a The Bendix Corporation |
| **Defendant Status:** | Manufacturer and Seller |
| **Product Type:** | asbestos-containing molded friction materials including, but not limited to, asbestos-containing brake block, asbestos-containing drum lining, asbestos-containing disc pads, asbestos-containing clutch facings; and other asbestos-containing products |
| **Brand Name:** | Bendix, Allied Signal and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| IMO INDUSTRIES, INC. | |
|---|---|
| **Defendant:** | IMO Industries, Inc., Individually and as Successor-in-Interest to Adel Fasteners |
| **Defendant Status:** | Designer, Manufacturer, and Seller |
| **Product Type:** | asbestos-containing pumps; and other asbestos-containing products |
| **Brand Name:** | DeLaval and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>   Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>   Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| INGERSOLL-RAND COMPANY | |
|---|---|
| **Defendant:** | Ingersoll-Rand Company |
| **Defendant Status:** | Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | asbestos-containing pumps; asbestos-containing compressors; and other asbestos-containing equipment |
| **Brand Name:** | Ingersoll-Rand and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| LOCKHEED MARTIN CORPORATION | |
|---|---|
| **Defendant:** | Lockheed Martin Corporation |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | asbestos-insulated aircraft engines and other asbestos-containing component parts |
| **Brand Name:** | Lockheed and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| LYCOMING, A TEXTRON COMPANY | |
|---|---|
| **Defendant:** | Lycoming, A Textron Company |
| **Defendant Status:** | Manufacturer, Supplier and Seller |
| **Product Type:** | asbestos-containing friction materials, asbestos-containing components, and asbestos-containing insulation products incorporated for use in private aircraft; asbestos-insulated aircraft engines and other asbestos-containing component parts |
| **Brand Name:** | various |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| MEGGIT AIRCRAFT BREAKING SYSTEM | |
|---|---|
| **Defendant:** | Meggit Aircraft Breaking System, f/k/a The Goodyear Tire & Rubber Company |
| **Defendant Status:** | Manufacturer, Supplier and Seller |
| **Product Type:** | asbestos-containing air craft braking systems; and various other asbestos-containing products |
| **Brand Name:** | Various |
| **Specific Location of Exposure:** | See above jobsites. |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| NORTHROP GRUMMAN CORPORATION | |
|---|---|
| **Defendant:** | Northrop Grumman Corporation |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | Asbestos containing aircraft components, such as: asbestos-containing friction materials, including brakes, and brake components; asbestos-containing components including gaskets, firesleeves, Adel clamps, insulation and other asbestos-containing products incorporated for use in military aircraft |
| **Brand Name:** | Northrop Grumman, Grumman and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| PARKER-HANNIFIN CORPORATION | |
|---|---|
| **Defendant:** | Parker-Hannifin Corporation, Individually and as successor-in-interest to Stratoflex |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | asbestos-containing friction materials, asbestos-containing components, asbestos-containing firesleeves, asbestos-containing brakes and asbestos-containing insulation products incorporated for use in military aircraft |
| **Brand Name:** | Stratoflex, Cleveland, McCauley and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above date(s) |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>   Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>   Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| PNEUMO ABEX CORPORATION | |
|---|---|
| **Defendant:** | Pneumo Abex Corporation |
| **Defendant Status:** | Manufacturer, Seller and Supplier |
| **Product Type:** | asbestos-containing aircraft friction products, asbestos-containing brakes and other asbestos-containing products |
| **Brand Name:** | Abex and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>   Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>   Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| ROLLS-ROYCE CORPORATION | |
|---|---|
| **Defendant:** | Rolls-Royce Corporation |
| **Defendant Status:** | Manufacturer, Seller and Supplier |
| **Product Type:** | asbestos-containing aircraft friction products, asbestos-containing brakes and other asbestos-containing products |
| **Brand Name:** | Rolls-Royce and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| TELEDYNE CONTINENTAL MOTORS, INC. | |
|---|---|
| **Defendant:** | Teledyne Continental Motors, Inc., f/k/a Continental Motors Inc. |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | asbestos-insulated aircraft engines and other asbestos-containing component parts |
| **Brand Name:** | Continental and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following: <br> - Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers. <br> - 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case. <br> - Discovery responses of this and other defendants in this case. <br> - Discovery responses of the Plaintiff. <br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form. <br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| UNION CARBIDE CORPORATION | |
|---|---|
| **Defendant:** | Union Carbide Corporation |
| **Defendant Status:** | Manufacturer and Seller |
| **Product Type:** | Calidria raw asbestos fiber and other asbestos-containing products. |
| **Brand Name:** | Calidria; Georgia-Pacific, US Gypsum, National Gypsum, Kaiser Gypsum, Conwed, Kelly Moore and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

| UNITED TECHNOLOGIES CORPORATION | |
|---|---|
| **Defendant:** | United Technologies Corporation, Individually and for its unincorporated division Pratt & Whitney Co., Inc. |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | asbestos-containing aircraft engines and other asbestos-containing component parts (such as gaskets, clamps and others) |
| **Brand Name:** | Pratt & Whitney and various others |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Product Identification and Exposure Evidence:** | Plaintiff handled or used the above-named product(s) while working in his trade and while working in close proximity to other trades who were handling or using the above-named products.  The handling or usage of the products created significant amounts of asbestos-containing dust which Plaintiff inhaled on a frequent and recurring basis. Plaintiff Incorporates herein all evidence contained in the following:<br>- Depositions, affidavits and other testimony of Plaintiff and Plaintiff's co-workers.<br>- 30(b)(6) Deposition and/or Trial Testimony of All Corporate Representatives of this and all other defendants in this case.<br>- Discovery responses of this and other defendants in this case.<br>- Discovery responses of the Plaintiff.<br><br>  Defendants have not yet fully responded to plaintiff's discovery requests, and plaintiff reserves the right to introduce at trial any information gathered after the date of filing of this disclosure form.<br>  Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 14TH DAY

OF DECEMBER, 2018.


/s/ Michael Levesque
Michael Levesque




CERTIFICATE OF SERVICE

I, Michael C. Shepard, Esq., hereby certify that I served a true and correct copy of the attached document by File & ServeXpress, upon all named Defendants on this 14th day of December, 2018.


/s/ Michael C. Shepard
Michael C. Shepard

# EXHIBIT 3

COMMONWEALTH OF MASSACHUSETTS

Oct 18 2005
12:21PM

MIDDLESEX, SS.

                        X

MICHAEL LEVESQUE, Executor of the
Estate of PAULINE LEVESQUE,

     Plaintiff,

v.

AMCHEM PRODUCTS, INC.
AMERICAN OPTICAL CORP.
AMERICAN RADIATOR & STANDARD SANITARY CORP.
AVCO CORPORATION
A.W. CHESTERTON CO.
BABCOCK BORSIG POWER, INC., f/k/a
    Riley Stoker Corporation
BELL & GOSSETT DOMESTIC PUMP
BJ SERVICES COMPANY, f/k/a Byron Jackson Co.
BORG-WARNER CORP.
BUFFALO PUMPS, INC.
CERTAINTEED CORP.
CESSNA AIRCRAFT COMPANY
CONGOLEUM CORPORATION
CRANE CO.
CROWN, CORK & SEAL
CURTISS-WRIGHT CORPORATION
DELAVAL DIRECT DISTRIBUTION LLC
EASTERN REFRACTORIES COMPANY, INC.
ECKEL INDUSTRIES, INC.
FOSTER WHEELER CORPORATION
GARLOCK, INC.
GENERAL ELECTRIC COMPANY
GEORGIA-PACIFIC CORP.
GOODYEAR AEROSPACE CORPORATION
GOULD PUMP, INC.
GRUMMAN
GUARD-LINE, INC., individually and as successor-in-interest to
    Twentieth Century Glove Corporation
H.B. SMITH CO., INC.
HERCULES CHEMICAL CO., INC.
HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal, Inc.,
    f/k/a The Bendix Corporation

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

CIVIL ACTION NO.
02-5427

THIRD AMENDED
COMPLAINT

PLAINTIFF DEMANDS
TRIAL BY JURY

INGERSOLL & RAND
J.H. FRANCE REFRACTORIES CO., A division of Adience, Inc.
KAISER GYPSUM COMPANY, INC.
LOCKHEED MARTIN CORPORATION, as successor in interest to Loral Corporation and
Goodyear Aerospace Corporation
LYCOMING, A Textron Company
MAULE AIR, INC.
METROPOLITAN LIFE INSURANCE CO.
NEW ENGLAND INSULATION CO.
NEW ENGLAND POWER COMPANY f/k/a Montaup Electric Company
NORTHROP GRUMMAN
PARKER-HANNIFIN CORPORATION, Aircraft Wheel & Brake Division,
     d/b/a Cleveland Wheels & Brakes
PATTERSON PUMP, A Subsidiary of the Gorman-Rupp Company
PAUL E. DUTELLE & CO.
PFIZER INC.
PRATT & WHITNEY CO., INC.
QUIGLEY CO., INC.
RAPID-AMERICAN CORP.
RAYTHEON AIRCRAFT COMPANY, f/k/a Beech Aircraft Corporation
ROCKWELL INTERNATIONAL CORP.
ROLLS-ROYCE CORPORATION
SB DECKING, INC. f/k/a Selby, Battersby & Co.
STERLING FLUID SYSTEMS (USA) INC., f/k/a Peerless Pump Company
TELEDYNE CONTINENTAL MOTORS, A Teledyne Technologies Company
TYCO INTERNATIONAL (US) INC.
TYCO VALVES & CONTROLS LIMITED PARTNERSHIP
UNION CARBIDE CORPORATION
UNIROYAL, INC.
VAN DUSEN AIRCRAFT SUPPLIES OF NEW ENGLAND, INC.
VIACOM INC., Successor in interest to Westinghouse Electric Corporation
WALDO BROTHERS CO.
WARREN PUMPS LLC

Defendants.

_____X

## PARTY PLAINTIFF

1.     The plaintiff Michael Levesque resides at

## PARTY DEFENDANTS

2

2A.     AMCHEM PRODUCTS, INC. is a Pennsylvania corporation with its principal place of business at 300 Brookside Avenue, Ambler, PA, 19002. AMCHEM PRODUCTS, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2B.     AMERICAN OPTICAL CORP. is a Massachusetts corporation with its principal place of business at 101 Mechanics Street, Southbridge, MA, 01550.

2C.     AMERICAN RADIATOR & STANDARD SANITARY CORP. is a Delaware corporation with its principal place of business at 15 West 54th Street, New York, NY, 10019. AMERICAN RADIATOR & STANDARD SANITARY CORP has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2D.     AVCO CORPORATION is a Delaware corporation with its principal place of business at 40 Westminster Street, Providence, RI, 02903. AVCO CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2E.     A. W. CHESTERTON CO. is a Massachusetts corporation with its principal place of business at 225 Fallon Road, Stoneham, MA, 02180.

2F.     BABCOCK BORSIG POWER, INC., f/k/a Riley Stoker Corporation, is a Massachusetts corporation with its principal place of business at 5 Neponset Street, Worcester, MA, 01613.

2G.     BELL & GOSSETT DOMESTIC PUMP is, upon information and belief, a corporation with its principal place of business at 8200 N. Austin Ave., Morton Grove, IL, 60053. BELL & GOSSETT DOMESTIC PUMP has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

3

2H. BJ SERVICES COMPANY, f/k/a Byron Jackson Co. is a Texas corporation with its principal place of business at 5500 Northwest Central Drive, Houston, TX, 77092. BJ SERVICES, f/k/a Byron Jackson Co. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2I. BORG-WARNER CORP. is a Delaware corporation with its principal place of business at 200 S. Michigan Avenue, Chicago, IL, 60604. BORG-WARNER CORP. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2J. BUFFALO PUMPS, INC. is a New York corporation with its principal place of business at 874 Oliver Street, N. Towanda, NY, 14120. BUFFALO PUMPS, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2K. CERTAINTEED CORPORATION is a Delaware corporation with its principal place of business at 750 East Swedesford Road, Valley Forge, PA, 19482. CERTAINTEED CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2L. CESSNA AIRCRAFT COMPANY is a Kansas corporation with its principal place of business at 5800 East Pawnee Road, Wichita, KS, 67218-5590. CESSNA AIRCRAFT COMPANY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2M. CONGOLEUM CORPORATION is a Delaware corporation with its principal place of business at 3500 Quaker Bridge Road, Suite 211, Mercerville, NJ, 08619.

4

CONGOLEUM CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2N.   CRANE CO. is a Delaware corporation with its principal place of business at 100 First Stamford Place, Stamford, CT. CRANE CO. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2O.   CROWN, CORK & SEAL COMPANY, INC. is a New York corporation with its principal place of business at 9300 Ashton Road, Philadelphia, PA, 19136. CROWN, CORK & SEAL COMPANY, INC., has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2P.   CURTISS-WRIGHT CORPORATION is, upon information and belief, a corporation with its principal place of business at 4 Becker Farm Road, 3rd Floor, Roseland, NJ, 07068. CURTISS-WRIGHT CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2Q.   DELAVAL DIRECT DISTRIBUTION LLC is a Delaware limited liability corporation with its principal place of business c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801. DELAVAL DIRECT DISTRIBUTION LLC has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2R.   EASTERN REFRACTORIES COMPANY, INC. is a Massachusetts corporation with its principal place of business at 128 Wheeler Road, Burlington, MA, 01803.

2S.   ECKEL INDUSTRIES, INC. is a Massachusetts corporation with its principal place of business at 155 Fawcett Street, Cambridge, MA, 02138.

5

2T. FOSTER WHEELER CORPORATION is a Delaware corporation with its principal place of business at Perryville Corporate Park, NJ, 08809. FOSTER WHEELER CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2U. GARLOCK, INC. is a New York corporation with its principal place of business at 1666 Division Street, Palmyra, NY, 14522. GARLOCK, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2V. GENERAL ELECTRIC CO. is a New York corporation with its principal place of business at 1 River Road, Schenectady, NY, 12345. GENERAL ELECTRIC CO. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts..

2W. GEORGIA-PACIFIC CORP. is a Georgia corporation with its principal place of business at 133 Peachtree Street NE, Atlanta, GA, 30303. GEORGIA-PACIFIC CORP. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2X. GOODYEAR AEROSPACE CORPORATION is a Delaware corporation with its principal place of business at 1210 Massillon Road, Akron, OH, 44315. GOODYEAR AEROSPACE CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2Y. GOULD PUMP, INC. is a New York corporation with its principal place of business c/o Tax Department, 240 Fall Street, Seneca, NY, 13148. GOULD PUMP, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

6

2Z. GUARD-LINE, INC., individually and as successor-in-interest to Twentieth Century Glove Corporation, is a Texas corporation with its principal place of business at 215 South Louise Street, Atlanta, TX, 75551. GUARD-LINE, INC., individually and as successor-in-interest to Twentieth Century Glove Corporation has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2AA. H.B. SMITH CO., INC. is a Massachusetts corporation with its principal place of business at 47 Westfield Industrial Park, Westfield, Massachusetts, 01085.

2BB. HERCULES CHEMICAL CO., INC. is a Delaware corporation with its principal place of business at 910 Market Street, Wilmington, DE, 19899. HERCULES CHEMICAL CO., INC., has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2CC. HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal, Inc., f/k/a The Bendix Corporation, is a Delaware corporation with its principal place of business at 101 Columbia Road, Morristown, NJ, 07962. HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal, Inc., f/k/a The Bendix Corporation, has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2DD. INGERSOLL & RAND is a New Jersey corporation with its principal place of business at 200 Chestnut Ridge Road, Woodcliff, NJ, 07675. INGERSOLL & RAND has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2EE. J.H. FRANCE REFRACTORIES CO., A Division of Adience, Inc., is a Pennsylvania corporation with its principal place of business in the State of Pennsylvania. J.H.

7

FRANCE REFRACTORIES CO., A Division of Adience, Inc., has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2FF.    KAISER GYPSUM COMPANY, INC. is a Washington corporation with its principal place of business in a state other than Massachusetts. KAISER GYPSUM COMPANY, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2GG.    LOCKHEED MARTIN CORPORATION, AS SUCCESSOR IN INTEREST TO LORAL CORPORATION AND GOODYEAR AEROSPACE CORPORATION is a Delaware corporation with its principal place of business at 6801 Rockledge Drive, Bethesda, MD, 20817. LOCKHEED MARTIN CORPORATION, AS SUCCESSOR IN INTEREST TO LORAL CORPORATION AND GOODYEAR AEROSPACE CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2HH.    LYCOMING, A Textron Company, is a Pennsylvania corporation with its principal place of business at 652 Oliver Street, Williamsport, PA, 17701. LYCOMING, A Textron Company, has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2II.    MAULE AIR, INC. is a Georgia corporation with its principal place of business at 2099 Georgia Highway 133 South, Moultrie, GA, 31768. MAULE AIR, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2JJ.    METROPOLITAN LIFE INSURANCE COMPANY is a New York corporation with its principal place of business at 1 Madison Avenue, New York, NY, 10010-3644. METROPOLITAN LIFE INSURANCE COMPANY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

8

2KK.   NEW ENGLAND INSULATION CO. is a Massachusetts corporation with its principal place of business at 55 North Street, Canton, MA, 02021.

2LL.   NEW ENGLAND POWER COMPANY, f/k/a Montaup Electric Company is a Massachusetts corporation with its principal place of business at 25 Research Drive, Westborough, MA, 01582.

2MM.  NORTHRUP GRUMMAN is, upon information and belief, a corporation with its principal place of business at 1840 Century Park East, Los Angeles, CA, 90067. NORTHROP GRUMMAN has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2NN.   PARKER-HANNIFIN CORPORATION, Aircraft Wheel & Brake Division, d/b/a Cleveland Wheels & Brakes, is an Ohio corporation with its principal place of business at 6035 Parkland Boulevard, Cleveland, OH, 44124. PARKER-HANNIFIN CORPORATION, Aircraft Wheel & Brake Division, d/b/a Cleveland Wheels & Brakes, has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2OO.   PATTERSON PUMP, a subsidiary of The Gorman-Rupp Company, is, upon information and belief, a corporation with its principal place of business at 305 Bowman Street, Mansfield, OH, 44903. PATTERSON PUMP, a subsidiary of The Gorman-Rupp Company has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2PP.   PAUL E. DUTELLE & CO., INC. is a Massachusetts corporation with its principal place of business at 153 Pearl Street, Newton, MA, 02158.

9

2QQ.  PFIZER, INC. is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, NY, 10017. PFIZER, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2RR.  PRATT & WHITNEY CO., INC. is an Ohio corporation with its principal place of business at 1 Charter Oak Boulevard, West Hartford, CT. PRATT & WHITNEY CO., INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2SS.  QUIGLEY CO., INC. is a New York corporation with its principal place of business at 235 East 42nd Street, New York, NY, 10017. QUIGLEY CO., INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2TT.  RAPID AMERICAN CORP. is a Pennsylvania corporation with its principal place of business at 667 Madison Avenue, New York, NY, 10022. RAPID AMERICAN CORP., and its predecessor in interest, Philip Carey Manufacturing Co., have conducted business in and have derived substantial revenue from the Commonwealth of Massachusetts.

2UU.  RAYTHEON AIRCRAFT COMPANY, f/k/a Beech Aircraft Corporation, is a Kansas corporation with its principal place of business at 9709 East Central, Wichita, KS, 67206. RAYTHEON AIRCRAFT COMPANY, f/k/a Beech Aircraft Corporation, has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2VV.  ROCKWELL INTERNATIONAL CORP. is a Nevada corporation with its principal place of business at 777 East Wisconsin Ave., Milwaukee, WI, 53202. ROCKWELL INTERNATIONAL CORP. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

10

2WW. ROLLS-ROYCE CORPORATION is a Delaware corporation with its principal place of business at 2355 South Tibbs Avenue, Indianapolis, IN, 46241. ROLLS-ROYCE CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2XX. SB DECKING, f/k/a Selby, Battersby & Co., is a Delaware corporation with its principal place of business at Elm and Lee Streets, Conshohocken, PA, 19428. SB DECKING, f/k/a Selby, Battersby & Co. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2YY. STERLING FLUID SYSTEMS (USA) INC., f/k/a Peerless Pump Company, is a Delaware corporation with its principal place of business at 2005 Dr. Martin Luther King Jr. Street, Indianapolis, IN, 46202. STERLING FLUID SYSTEMS (USA) INC., f/k/a Peerless Pump Company, has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2ZZ. TELEDYNE CONTINENTAL MOTORS, INC., A Teledyne Technologies Company, is a Delaware corporation with its principal place of business at Brookley Industrial Complex, 2039 Broad Street, Mobile, AL, 36615-1293. TELEDYNE CONTINENTAL MOTORS, INC., A Teledyne Technologies Company, has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2AAA.TYCO INTERNATIONAL (US) INC. is a Nevada corporation with its principal place of business at 1 Tyco Park, Exeter, NH, 03833. TYCO INTERNATIONAL (US) INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

11

2BBB. TYCO VALVES & CONTROLS LIMITED PARTNERSHIP is a Delaware limited partnership with its principal place of business at 3 Tyco Park, Exeter, NH, 03833. TYCO VALVES & CONTROLS LIMITED PARTNERSHIP has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2CCC. UNION CARBIDE CORPORATION is a New York corporation with its principal place of business at Old Ridgebury Road, Danbury, CT, 06817. UNION CARBIDE CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2DDD. UNIROYAL, INC. is a New Jersey corporation with its principal place of business at World Headquarters, Middlebury, CT, 06749. UNIROYAL, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2EEE. VAN DUSEN AIRCRAFT SUPPLIES OF NEW ENGLAND, INC. is a Massachusetts corporation with its principal place of business at Logan Airport, East Boston, MA, 02128.

2FFF. VIACOM INC., Successor in interest to Westinghouse Electric Corporation, is a Delaware corporation with its principal place of business at 1515 Broadway, New York, NY. VIACOM INC., Successor in interest to Westinghouse Electric Corporation, has done business in and has derived substantial revenue from the Commonwealth of Massachusetts.

2GGG. WALDO BROTHERS CO. is a Massachusetts corporation with its principal place of business at 202 Southampton Street, Boston, MA, 02118.

2HHH. WARREN PUMPS LLC is a Delaware limited liability corporation with its principal place of business at 82 Bridges Ave., Warren, MA. WARREN PUMPS LLC has

12

conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

As used in this Complaint, the terms "defendant," "defendants" or "defendant corporations" shall include the party defendants identified in paragraphs 2A-2HHH hereof, and their predecessors and successors, which shall include, but is not limited to, any person, corporation, company or business entity which formed part of any combination, consolidation, merger or reorganization from which any party defendant was created or was the surviving corporation or other entity, or into which any party defendant was merged, consolidated or reorganized; whose assets, stock, property, employees, customers, good will, products or product line was acquired by or from any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was acquired by or from any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

3. The plaintiff's cause of action arises from the defendants: (a) transacting business in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a tortious act to occur within Massachusetts.

4. The asbestos and asbestos-containing products to which plaintiff decedent Pauline Levesque was exposed were mined, milled, manufactured, fabricated, contracted, installed, supplied, distributed, sold, and/or used by the defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants.

13

5. At all times pertinent hereto, the defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, contracting, installing, supplying, distributing, selling, and/or using asbestos and asbestos-containing products.

6. At all times pertinent hereto, the asbestos products were products mined, milled, manufactured, fabricated, contracted, installed, supplied, distributed, sold, and/or used by the defendant corporations and reached plaintiff Pauline Levesque without any substantial change in the condition of the product or products from the time that they were sold.

7. Plaintiff decedent Pauline Levesque was exposed to asbestos and asbestos-containing materials through her father who worked as an electrician at various power plants in Massachusetts and elsewhere. During that period of time, plaintiff decedent Pauline Levesque was exposed to asbestos and asbestos-containing products through her constant daily contact with her father and her father's dirty work clothes. These asbestos materials and insulation products were designed, advertised and marketed as being capable of use in the ordinary course in the construction trades. It was foreseeable that defendants' asbestos insulation products would be sold for installation at various construction sites and that they would be fabricated and used at these sites. Plaintiff's father worked at his trade at various sites and was thereby exposed to defendants' asbestos insulation products and materials. The asbestos insulation installed became an appurtenance and/or integral part of the construction sites.

8. Plaintiff decedents' father worked continuously with and around the defendants' asbestos and asbestos-containing products from the 1940s through the 1960s. During this period of time, plaintiff decedent Pauline Levesque was exposed to asbestos and asbestos-containing products through her constant daily contact with her father and his dirty work clothes.

14

9.      During the period of time set forth in Paragraph 8, plaintiff decedent Pauline Levesque was exposed to and did inhale and/or ingest asbestos dust, fibers and particles, which dust, fibers, and particles came from the asbestos or asbestos-containing products which were manufactured, fabricated, supplied, sold, distributed, installed, serviced, maintained, repaired, and/or used by the defendant corporations.

10.     As a direct and proximate result of working with, around, and/or near asbestos materials mined, milled, processed, manufactured, designed, fabricated, tested, purchased, sold, supplied, distributed, installed, serviced, maintained, repaired, employed, used or otherwise placed in the stream of commerce by the defendants, plaintiff decedent Pauline Levesque developed an asbestos-related injury. She suffered serious personal injuries, endured great pain of body and mind, suffered severe mental anguish and distress, was prevented from transacting her business, incurred substantial medical expenses, and was killed. Her earning capacity was greatly impaired. Further, next of kin incurred funeral and burial expenses and were deprived of her services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

## COUNT I

## NEGLIGENCE

## (CONSCIOUS PAIN AND SUFFERING)

11.     The plaintiff incorporates by reference paragraphs 1 through 10 above as if expressly alleged and set forth herein.

12.     It was the duty of the defendant corporations to use and exercise reasonable and due care in the manufacture, fabrication, testing, inspection, production, marketing, packaging,

15

sale, supply, distribution, installation, repair and use of their asbestos and asbestos-containing products.

13.    It was also the duty of the defendant corporations to provide detailed and adequate instructions relative to the proper and safe handling and use of their asbestos and asbestos-containing products, and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of their asbestos and asbestos-containing products.

14.    It was the continuing duty of the defendant corporations to advise and warn purchasers, consumers, users, and prior purchasers, prior consumers, and prior users of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of their asbestos and asbestos-containing products.

15.    Yet, nevertheless, wholly disregarding the aforesaid duties, the defendant corporations breached their duties by: (a) failing to warn plaintiff decedent Pauline Levesque of the dangers, characteristics, and potentialities of their asbestos-containing products when the defendant corporations knew or should have known that exposure to their asbestos-containing products would cause disease and injury; (b) failing to warn plaintiff decedent Pauline Levesque of the dangers to which she was exposed when they knew or should have known of the dangers; (c) failing to exercise reasonable care to warn plaintiff decedent Pauline Levesque of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working with or near or being exposed to their asbestos and asbestos-containing products; (d) failing to provide safe, sufficient and proper protective clothing, equipment and appliances with their asbestos and asbestos-containing products; (e) failing to test its asbestos and asbestos-containing products in order to ascertain the extent of danger involved upon exposure thereto; (f) failing to conduct such research as should have been conducted in the exercise of reasonable care, in order to ascertain

16

the dangers involved upon exposure to their asbestos and asbestos-containing products; (g) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise plaintiff decedent Pauline Levesque of said dangers, hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards, and potentialities; and (j) generally using unreasonable, careless, and negligent conduct in the manufacture, fabrication, supply, distribution, sale, installation, and/or use of their asbestos and asbestos-containing products.

16.     As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporations, plaintiff decedent Pauline Levesque developed an asbestos related injury. She suffered serious personal injuries, endured great pain of body and mind, incurred substantial medical expenses, and was killed. Her earning capacity was greatly impaired. Further, her next of kin incurred funeral and burial expenses and were deprived of her services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

17.     The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

WHEREFORE, plaintiff demands judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## COUNT II

17

## BREACH OF EXPRESS AND IMPLIED WARRANTIES

18. The plaintiff incorporates by reference paragraphs 1 through 17 above as if expressly alleged and set forth herein.

19. Plaintiff decedent Pauline Levesque was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the meaning of Massachusetts General Laws c. 106, secs. 2-314 and 2-318, as the defendants knew or had reason to know that their asbestos and asbestos-containing products would be used in the insulation or construction industry and that individuals such as plaintiff decedent Pauline Levesque would come in contact with such asbestos materials.

20. The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary purposes, and the particular purposes and requirements of plaintiff decedent Pauline Levesque.

21. The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

22. Plaintiff decedent Pauline Levesque relied upon the defendants' skill or judgment in selecting suitable insulation or construction products for safe use.

23. The defendants breached these warranties, in that the asbestos and asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes.

24. As a direct and proximate result of the defendants' breach of warranties, plaintiff decedent Pauline Levesque contracted an asbestos related injury. Plaintiff decedent Pauline Levesque suffered serious personal injuries, endured great physical pain and suffering, suffered severe mental anguish and distress, and was prevented from transacting her business. She

18

incurred substantial medical expenses in connection with her illness. Her earning capacity was greatly impaired. Further, her next of kin incurred funeral and burial expenses and were deprived of her services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

WHEREFORE, plaintiff demands judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## COUNT III

## NEGLIGENCE

## (WRONGFUL DEATH)

25.     The plaintiff incorporates by reference paragraphs 1 through 24 above as if expressly alleged and set forth herein.

26.     As a direct and proximate result of the unreasonable, careless and negligent conduct of the defendant corporations, the next of kin of Pauline Levesque incurred funeral and burial expenses and were deprived of the decedent's care, comfort, society, companionship, advice, assistance, services, protection, counsel and advice.

27.     This count for death is brought by the representative of the estate for use of the next of kin of the decedent.

WHEREFORE, the plaintiff demands judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## COUNT IV

## PUNITIVE DAMAGES

19

28.     The plaintiff incorporates by reference paragraphs 1 through 27 above as if expressly alleged and set forth herein.

29.     As early as 1929, the defendants, or some of them, possessed medical and scientific data clearly indicating that asbestos and asbestos-containing products were hazardous to the health and safety of plaintiff decedent Pauline Levesque, and others in her position.

30.     The defendants, or some of them, during the 1930's, 1940's, 1950's and 1960's became possessed of voluminous medical and scientific data, studies, and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of plaintiff decedent Pauline Levesque and all other persons exposed to the products.

31.     The defendants, or some of them, since the 1930's have had numerous workers' compensation claims filed against them by the former asbestos workers or employees, or knew such claims were filed against asbestos product suppliers and manufacturers.

32.     Prompted by pecuniary motives, the defendants ignored and failed to act upon such medical and scientific data and conspired to deprive the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of the free choice as to whether or not to expose themselves to the asbestos and asbestos-containing products of the defendants.

33.     The defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, by continuing to market their asbestos products, with reckless disregard for the health and safety of plaintiff decedent, Pauline Levesque, and other users or consumers, knowing

20

the dangerous characteristics and propensities of said asbestos products, but still depriving those affected by the dangers from information about those dangers.

34.    Because the defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence in marketing their hazardous asbestos or asbestos-containing products, in ignoring the medical and scientific data which was available to them, and depriving consumers, users and the general public from that medical and scientific data, the plaintiff is entitled to punitive damages.

WHEREFORE, plaintiff demands judgment against the defendants for punitive damages pursuant to M.G.L. c. 229, s. 2.

## DEMAND FOR TRIAL BY JURY

The plaintiff hereby demands a trial by jury on each claim asserted or hereafter asserted

by the plaintiff and on each defense asserted or hereafter asserted by the defendants.

> Respectfully submitted,
> The plaintiff,
> By his attorneys,

Dated: October 18, 2005

[original signature on file]
Michael C. Shepard, Esq.
BBO No. 567842
Erika A, Olson, Esq.
BBO No. 661534
The Shepard Law Firm, P.C.
10 High Street
Boston, MA 02110
(617) 451-9191

22

# EXHIBIT 4



COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                SUPERIOR COURT
                                             DEPARTMENT OF THE
                                             TRIAL COURT

MICHAEL LEVESQUE, Executor of      )         CIVIL ACTION NO.
the Estate of PAULINE LEVESQUE,    )         02-5427
                                   )
        Plaintiff,                 )
                                   )
v.                                 )
                                   )
AMCHEM PRODUCTS, INC., et al.,     )
                                   )
        Defendants.                )
                                   )

# PLAINTIFF'S SECOND AMENDED DISCLOSURE FORM

Michael C. Shepard, Esq.
BBO No. 567842
Lisa S. Geller, Esq.
BBO No. 658269
The Shepard Law Firm, P.C.
10 High Street
Boston, MA 02110
(617) 451-9191



## V. PLAINTIFF PRODUCT IDENTIFICATION/EXPOSURE

| NAME: PAULINE LEVESQUE | CIVIL ACTION NO.: 02-5427 |
|---|---|

| EXPOSURE SITES #1 | |
|---|---|
| Employer: | Various (1929-1949) |
| Jobsite/Exposure Site: | Boston Edison power plants<br>Montaup Electric Power Plant |
| Duties at Exposure Site: | Pauline Levesque (exposure years:1929 to 1979)  was exposed to defendants' asbestos products through her constant and daily contact with her father. Her exposure to him as well as his dirty work clothes exposed her to asbestos. |
| New Construction or Repair: | New construction and repair |

| EXPOSURE SITES #2 | |
|---|---|
| Employer: | Various airlines including, but not limited to Northwest Airlines (1949-1959) |
| Jobsite/Exposure Site: | New Bedford Airport, Fall River Airport and Logan Airport |
| Duties at Exposure Site: | Pauline Levesque was exposed to defendants' asbestos products through her constant and daily contact with her husband who was a aircraft mechanic. Her exposure to him as well as his dirty work clothes exposed her to asbestos. |
| New Construction or Repair: | Primarily repair work. |



| KAISER GYPSUM COMPANY, INC. | |
|---|---|
| **Defendant:** | Kaiser Gypsum Company, Inc. |
| **Defendant Status:** | Manufacturer, Seller and Supplier |
| **Product Type:** | asbestos-containing paints; asbestos-containing plasters; and other asbestos-containing products |
| **Brand Name:** | Kaiser Gypsum and various others |
| **Product Identification Evidence:** | Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above dates |
| **Exposure Evidence:** | Plaintiff's father and/or husband handled or used the above-named product(s) while working in their respective trades and while working in close proximity to other trades who were handling or using the above-named product(s). The handling or usage of the products created large amounts of asbestos-containing dust which Plaintiff inhaled through her constant and daily contact with her father and her husband. |

| LOCKHEED MARTIN AEROSPACE CORP. | |
|---|---|
| **Defendant:** | Lockheed Martin Aerospace Corp. |
| **Defendant Status:** | Designer, Manufacturer, Distributor, Supplier and Seller |
| **Product Type:** | asbestos-insulated aircraft engines and other asbestos-containing component parts |
| **Brand Name:** | Lockheed Martin and various others |
| **Product Identification Evidence:** | Co-worker identification, deposition evidence and sales/delivery invoices will be supplemented in accordance with Pre-Trial Order No. 6. |
| **Specific Location of Exposure:** | See above jobsite(s) |
| **Date of Exposure:** | See above date(s) |
| **Exposure Evidence:** | Plaintiff's father and/or husband handled or used the above-named product(s) while working in their respective trades and while working in close proximity to other trades who were handling or using the above-named product(s). The handling or usage of the products created large amounts of asbestos-containing dust which Plaintiff inhaled through her constant and daily contact with her father and her husband. |



SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS _____ DAY

OF _____, 2005.


_____

Michael Levesque



## CERTIFICATE OF SERVICE

I, Lisa S. Geller, Esq., hereby certify that I served a true and correct copy of the attached document, Plaintiffs' Second Amended Disclosure Form, by electronic mail via Verilaw, upon all counsel of record, and all other Defendants by first-class mail, postage pre-paid, on this 22nd day of February, 2005.

[Original Signature on File with The Court]
Lisa S. Geller, Esq.

# EXHIBIT 5

VOLUME 1                          PAGES 1 - 222

COMMONWEALTH OF MASSACHUSETTS

THE TRIAL COURT

SUPERIOR COURT DEPARTMENT

Middlesex County

* * * * * * * * * * * * * * * *

Michael Levesque, Executor of    *

the Estate of Pauline Levesque   *   Civil Action

v.                               *   No. 02-5427

Amchem Products, Inc.,           *

et al.                           *

* * * * * * * * * * * * * * * *


Deposition of Maurice R. Levesque

Tuesday, October 25, 2005

Ethan Allen Hotel

21 Lake Avenue Extension (Exit 4, I-84)

Danbury, Connecticut 06810


-----  J. Edward Varallo, RMR, Court Reporter  -----

EPPLEY COURT REPORTING, LLC

P.O. BOX 382, HOPEDALE, MASSACHUSETTS 01747

508.478.9795  FAX 508.478.0595

leppley@msn.com

Maurice Levesque                Volume I                October 25, 2005

---

## Page 2

```
 1   Present for Plaintiff:
 2      Michael C. Shepard, Esq.
        The Shepard Law Firm
        10 High Street
 3      Boston, Massachusetts 02110
        617.451.9191  Fax 617.451.9292
 4      mshepard@shepardlawfirm.com
 5
 6   Present for Union Carbide:
        Jeffrey T. Rotella, Esq.
 7      Adler Pollock & Sheehan, P.C.
        175 Federal Street
 8      Boston, Massachusetts 02110
        617.482.0600  Fax 617.482.0604
 9      jrotella@apslaw.com
10   Present (by telephone) for American Optical
     Corporation:
11      James P. Hoban, Esq.
        Bowditch & Dewey, LLP
12      311 Main Street - 4th Floor
        Worcester, Massachusetts 01608
13      508.791.3511  Fax 508.756.7636
        jhoban@bowditch.com
14
15   Present for The Bendix Corporation; Rockwell
     International:
16      Lawrence J. Sugarman, Esq.
        Cetrulo & Capone LLP
17      Two Seaport Lane - 10th Floor
        Boston, Massachusetts 02210
18      617.217.5500  Fax 617.217.5200
        lsugarman@cetcap.com
19
20   Present for Maule Air, Inc.; Georgia-Pacific
     Corporation; Curtiss-Wright Corporation; Pratt &
21   Whitney:
        Jonathan F. Tabasky, Esq.
22      Cooley Manion Jones, LLP
        21 Custom House Street - 6th Floor
23      Boston, Massachusetts 02110-3536
        617.737.3100  Fax 617.737.0374
24      jtabasky@cmj-law.com
```

## Page 3

```
 1   Present for Teledyne Continental Motors:
        Joni Katz Mackler, Esq.
 2      Curley & Curley, P.C.
        27 School Street
 3      Boston, Massachusetts 02106
        617.523.2990  Fax 617.523 7602
 4      jkm@curleylaw.com
 5
 6   Present for Northrop Grumman Corporation:
        Sheryl A. Koval, Esq.
 7      Goodwin Procter LLP
        Exchange Place
 8      53 State Street
        Boston, Massachusetts 02109
 9      617.570.1000  Fax 617.523.1231
        skoval@goodwinprocter.com
10
11   Present (by telephone) for Crane Co.; Eckel
     Industries, Inc.; Guard-Line, Inc.:
12      John R. Fitzgerald, Esq.
        Governo Law Firm LLC
13      260 Franklin Street - 15th Floor
        Boston, Massachusetts 02110
14      617.737.9045  Fax 617.737.9046
        jfitzgerald@governo.com
15
16   Present for Lycoming Engines; Cessna Aircraft
     Company:
17      James A. Ruggieri, Esq.
        Higgins Cavanagh & Cooney, LLP
18      The Hay Building - 4th Floor
        123 Dyer Street
19      Providence, Rhode Island 02903
        401.272.3500  Fax 401.273.8780
20      jruggieri@hcc-law.com
21   Present for Parker-Hannifin Corporation; Kaiser
     Gypsum Company, Inc.; Ingersoll-Rand Company:
22      Kara A. Lynch, Esq.
        Keegan Werlin, LLP
23      265 Franklin Street
        Boston, Massachusetts 02110
24      617.951.1400  Fax 617.951.1354
        klynch@kwplaw.com
```

## Page 4

```
 1   Present for Lockheed Martin Corporation; Goodyear
     Aerospace Corporation:
 2      Laura Patricia Yee, Esq.
        Knott & Glazier LLP
 3      601 South Figueroa Street - Suite 1950
        Los Angeles, California 90017
 4      213.312.9200  Fax 213.312.9201
        yee@knottglazier.com
 5
 6   Present for Raytheon Aircraft Company:
        Gary W. Harvey, Esq.
 7      Morrison Mahoney LLP
        250 Summer Street
 8      Boston, Massachusetts 02210
        617.439.7500  Fax 617.439.7590
 9      gharvey@morrisonmahoney.com
10   Present (by telephone) for Uniroyal:
11      A. Damien Puller, Esq.
        Nixon Peabody LLP
12      100 Summer Street - 25th Floor
        Boston, Massachusetts 02110
13      617.345.1000  Fax 617.345.1300
        dpuller@nixonpeabody.com
14
15   Present (by telephone) for New England Power Company
     f/k/a Montaup Electric Company; Borg Warner
16   Corporation:
        John R. Felice, Esq.
17      Pierce Davis & Perritano, LLP
        Ten Winthrop Square - 5th Floor
18      Boston, Massachusetts 02110
        617.350.0950  Fax 617.350.7760
19      jfelice@piercedavis.com
20
     Present for Pratt & Whitney:
21      Richard A. Dean, Esq.
        Tucker Ellis & West, LLP
22      1150 Huntington Building
        925 Euclid Avenue
23      Cleveland, Ohio 44115
        216.592.5000  Fax 216.592.5009
24      rdean@tuckerellis.com
```

## Page 5

```
 1   ----------------------------------------
 2               MORNING SESSION
 3                 10:10 a.m.
 4   ----------------------------------------
 5            MAURICE R. LEVESQUE,
 6          having been first duly sworn on oath,
 7          was examined and testified as follows:
 8                  EXAMINATION
 9   BY MR. SUGARMAN:
10      Q.   Mr. Levesque, my name is Larry Sugarman.
11   I'll be asking you the initial questions today.
12      A.   Okay.
13      Q.   To help things go smoothly today, I'll
14   just go over a few ground rules.  I would ask that
15   you allow me to ask my entire question before you
16   give an answer.  That way we're not talking over one
17   another and the court reporter can take us down in a
18   neat fashion.  Okay?
19      A.   Sure, yes.
20      Q.   I would ask that you give me verbal
21   responses to all of my questions as opposed to a
22   shake of the head or an uh-uh.
23      A.   Okay.
24      Q.   I'm sure you'll forget at some point; at
```

EPPLEY COURT REPORTING, LLC
(508) 478-9795

Maurice Levesque                Volume I                October 25, 2005

Page 106

1    Q.   B as in boy?

2    A.   B as in bravo, yeah. And Francis, I don't
3    know his initial.

4    Q.   Do you know how old Mr. Carlton or
5    Mr. McIntyre would be now?

6    A.   Mr. McIntyre would be 81 and John would be
7    76.

8    Q.   When you worked for Gillette, between the
9    three mechanic/pilots, who had the most seniority?

10   A.   Francis McIntyre.

11   Q.   Would he have been your supervisor or just
12   had more time --

13   A.   No, we were pretty much the same level.
14   He was just senior because of having gone to work
15   for Gillette two months before I did.

16   Q.   And then obviously in terms of experience
17   you would be in the middle and then --

18   A.   Right.

19   Q.   And then John Carlton?

20   A.   Right.

21   Q.   What types of airplanes did Gillette own
22   between 1956 and 1963?

23   A.   Well, when I went to work in 1963 they had
24   a Lockheed Lodestar, which was a converted bomber.

Page 107

1    That was executive transport aircraft at that time,
2    those years. We also had a Lockheed, a Learstar,
3    which basically was a Lodestar that had major
4    modifications done to it and had a tremendous amount
5    of fuel because the wings were solid fuel tanks and
6    they had a lot of units, which were creating a
7    tremendous amount of drag on the Lodestar, which
8    were removed and made it a very, very clean and fast
9    airplane. We flew the Lodestar at 180 knots and the
10   Learstar at 240 knots.

11   Q.   Any other planes that Gillette had between
12   1956 and 1963?

13   A.   Right. Around 1958 we bought, purchased
14   two Grumman Gulfstream I turboprop aircraft, which
15   were fully pressurized, which the other two aircraft
16   prior, none were pressurized, so we never flew above
17   10,000 feet. But the Gulfstreams were fully
18   pressurized to 30,000 feet, and it was the first
19   true executive transport built strictly for
20   corporations.

21   MS. YEE: Can I have that answer read
22   back, please?

23   (The reporter read the answer.)

24   MS. YEE: Thank you.

Page 108

1    BY MR. SUGARMAN:

2    Q.   Between 1956 and 1963 did you as a
3    mechanic work on or service, repair all of the
4    aircraft you just listed for me?

5    A.   Yes.

6    Q.   Between 1956 and 1963 --

7    MS. YEE: Objection, vague and ambiguous,
8    and overbroad as to the last portion.

9    BY MR. SUGARMAN:

10   Q.   Between 1956 and 1963 as a pilot did you
11   fly all of these planes?

12   A.   Yes.

13   Q.   I would like to move on to the next
14   employer after Gillette. Can you tell me who that
15   would have been?

16   A.   Dow Chemical in Lake Jackson, Texas.

17   Q.   Can you tell me the year you began working
18   for Dow Chemical?

19   A.   1963.

20   Q.   And how long did you stay there?

21   A.   Two years, 1965.

22   Q.   And what were you hired as for Dow
23   Chemical?

24   A.   Mechanic/pilot.

Page 109

1    Q.   And where was Dow Chemical located?

2    A.   Headquarters?

3    Q.   Yes. Strike the question. Where would
4    you actually report to work every day when you
5    worked for Dow Chemical?

6    A.   Lake Jackson, Texas at our own private
7    airport.

8    Q.   So this was an airport set aside
9    specifically for Dow Chemical?

10   A.   Yes.

11   Q.   There weren't any other companies or
12   planes --

13   A.   There was one other airplane, belonged to
14   a doctor, and he received special permission to keep
15   his aircraft there.

16   Q.   So you showed up to this private airport
17   for work every day?

18   A.   Not every day.

19   Q.   Where else would you go?

20   A.   Well, we were two flight crews and
21   mechanic/pilots for two years. I flew Mondays and
22   Fridays and the other flight crew flew Tuesdays and
23   Thursdays; Wednesday was a maintenance day.

24   Q.   Between 1963 and 1965, would you be able

28  (Pages 106 to 109)

Maurice Levesque          Volume I          October 25, 2005

### Page 218

1    Q.   Was it at the beginning of your
2    relationship with Pauline or just prior to your
3    marriage?
4    A.   Probably about halfway through.
5    Q.   Probably sometime in 1948?
6    A.   Yes.
7    Q.   Do you know how long before his industrial
8    accident that conversation took place?
9    A.   Probably about nine months, eight or nine
10   months, something like that.
11   Q.   And can you be more specific?  What did he
12   tell you they were doing?
13   A.   As far as?
14   Q.   The work on the generator.
15   A.   Oh, they had to dismantle it for overhaul.
16   Q.   Who is "they"?
17   A.   The engineers at Montaup Electric.
18   Q.   And did Pauline's father actually
19   participate in that overhaul work?
20   A.   Yes.
21   Q.   What was his role?
22   A.   He was just a worker.
23   Q.   Specifically did he tell you what his
24   actual role was as a worker?

### Page 219

1    A.   No.  He and the crew that were dismantling
2    it worked as a team.
3    Q.   Was he an employee of Montaup or was he a
4    member of a union shop?
5    A.   No, he was an employee of Montaup.
6    Q.   Do you know if he was a member of any
7    union?
8    A.   That I don't know.
9    Q.   And did he tell you that he believed he
10   was exposed to asbestos while working at Montaup?
11   A.   He didn't -- I don't ever remember him
12   telling me that he was exposed to asbestos.
13   Q.   And you have no personal knowledge
14   regarding whether or not he may have been exposed to
15   asbestos?
16   A.   No.
17   MR. FELICE:  I have no further questions.
18   Thank you.
19   MR. SHEPARD:  We'll break for the day,
20   resume in the morning.
21   (Deposition adjourned at 4:37 p.m. to the
22   following day at 9:30 a.m.)
23
24

### Page 220

1    COURT REPORTER'S CERTIFICATE
2    I, J. Edward Varallo, Registered Professional
3    Reporter, Notary Public, and Licensed Shorthand
4    Court Reporter in the State of Connecticut (License
5    #431), hereby certify that the deposition of Maurice
6    R. Levesque taken on October 25, 2005, in the matter
7    of Michael Levesque, Executor of the Estate of
8    Pauline Levesque v. Amchem Products, Inc., et al.,
9    was recorded by me stenographically and transcribed;
10   that the deponent was duly sworn by me.
11   I certify that the deposition transcript
12   produced by me is true and accurate to the best of
13   my ability.
14   I certify further that I am not counsel,
15   attorney, or relative of any party litigant, and
16   have no interest, financial or otherwise, in the
17   outcome of this suit.
18
19
20
21
22
23
24   DATED:  10/28/2005      J. Edward Varallo, RPR

### Page 221

1    WITNESS:  Maurice R. Levesque      [Volume 1]
2    DATE:    October 25, 2005
3    CASE:    Michael Levesque, Executor of the Estate
4            of Pauline Levesque v. Amchem Products,
5            Inc., et al.
6
7    DISTRIBUTION TO COUNSEL  The original signature
8    page/errata sheet was sent to Michael C. Shepard,
9    Esq., to obtain signature from the deponent.  When
10   signed, please send original to Lawrence J.
11   Sugarman, Esq., who will supply a copy of the signed
12   errata sheet to other counsel present at the
13   deposition.
14
15   WITNESS INSTRUCTIONS  After reading the transcript
16   of your deposition, please note any change or
17   correction and the reason for it on the errata
18   sheet.  DO NOT make any notations on the transcript
19   itself.  Use additional sheets if necessary.
20
21   SIGN AND DATE THE ERRATA SHEET and return it, along
22   with the transcript, to your counsel.
23
24

56 (Pages 218 to 221)

VOLUME 2                          PAGES 223 - 438

COMMONWEALTH OF MASSACHUSETTS

THE TRIAL COURT

SUPERIOR COURT DEPARTMENT

Middlesex County

* * * * * * * * * * * * * * * *

Michael Levesque, Executor of    *

the Estate of Pauline Levesque   *   Civil Action

v.                               *   No. 02-5427

Amchem Products, Inc.,           *

et al.                           *

* * * * * * * * * * * * * * * *


Deposition of Maurice R. Levesque

Wednesday, October 26, 2005

Ethan Allen Hotel

21 Lake Avenue Extension (Exit 4, I-84)

Danbury, Connecticut 06810


----- J. Edward Varallo, RMR, Court Reporter -----

EPPLEY COURT REPORTING, LLC

P.O. BOX 382, HOPEDALE, MASSACHUSETTS 01747

508.478.9795   FAX 508.478.0595

leppley@msn.com

Maurice Levesque                 Volume II                 October 26, 2005

---

Page 224

1    Present for Plaintiff:
2        Michael C. Shepard, Esq.
         The Shepard Law Firm
         10 High Street
3        Boston, Massachusetts 02110
         617.451.9191 Fax 617.451.9292
4        mshepard@shepardlawfirm.com
5
     Present for Union Carbide:
6        Jeffrey T. Rotella, Esq.
         Adler Pollock & Sheehan, P.C.
7        175 Federal Street
         Boston, Massachusetts 02110
8        617.482.0600 Fax 617.482.0604
         jrotella@apslaw.com
9
10   Present (by telephone) for American Optical
     Corporation:
11       James P. Hoban, Esq.
         Bowditch & Dewey, LLP
12       311 Main Street - 4th Floor
         Worcester, Massachusetts 01608
13       508.791.3511 Fax 508.756.7636
         jhoban@bowditch.com
14
15   Present for The Bendix Corporation; Rockwell
     International:
16       Lawrence J. Sugarman, Esq.
         Cetrulo & Capone LLP
17       Two Seaport Lane - 10th Floor
         Boston, Massachusetts 02210
18       617.217.5500 Fax 617.217.5200
         lsugarman@cetcap.com
19
20   Present for Maule Air, Inc.; Georgia-Pacific
     Corporation; Curtiss-Wright Corporation; Pratt &
21   Whitney:
         Jonathan F. Tabasky, Esq.
22       Cooley Manion Jones, LLP
         21 Custom House Street - 6th Floor
23       Boston, Massachusetts 02110-3536
         617.737.3100 Fax 617.737.0374
24       jtabasky@cmj-law.com

---

Page 225

1    Present for Teledyne Continental Motors:
2        Joni Katz Mackler, Esq.
         Curley & Curley, P.C.
3        27 School Street
         Boston, Massachusetts 02108
         617.523.2990 Fax 617.523.7602
4        jkm@curleylaw.com
5
     Present for Northrop Grumman Corporation:
6        Sheryl A. Koval, Esq.
         Goodwin Procter LLP
7        Exchange Place
         53 State Street
8        Boston, Massachusetts 02109
         617.570.1000 Fax 617.523.1231
9        skoval@goodwinprocter.com
10
     Present (by telephone) for Crane Co.; Eckel
11   Industries, Inc.; Guard-Line, Inc.:
         John R. Fitzgerald, Esq.
12       Governo Law Firm LLC
         260 Franklin Street - 15th Floor
13       Boston, Massachusetts 02110
         617.737.9045 Fax 617.737.9046
14       jfitzgerald@governo.com
15
     Present for Lycoming Engines; Cessna Aircraft
16   Company:
         James A. Ruggieri, Esq.
17       Higgins Cavanagh & Cooney, LLP
         123 Dyer Street - 4th Floor
18       Providence, Rhode Island 02903
         401.272.3500 Fax 401.273.8780
19       jruggieri@hcc-law.com
20
     Present for Parker-Hannifin Corporation; Kaiser
21   Gypsum Company, Inc.; Ingersoll-Rand Company:
         Kara A. Lynch, Esq.
22       Keegan Werlin, LLP
         265 Franklin Street
23       Boston, Massachusetts 02110
         617.951.1400 Fax 617.951.1354
24       klynch@kwplaw.com

---

Page 226

1    Present for Lockheed Martin Corporation; Goodyear
     Aerospace Corporation:
2        Laura Patricia Yee, Esq.
         Knott & Glazier LLP
3        601 South Figueroa Street - Suite 1950
         Los Angeles, California 90017
4        213.312.9200 Fax 213.312.9201
         yee@knottglazier.com
5
6    Present for Raytheon Aircraft Company:
         Tory A. Weigand, Esq.
7        Morrison Mahoney LLP
         250 Summer Street
8        Boston, Massachusetts 02210
         617.439.7500 Fax 617.439.7590
9        tweigand@morrisonmahoney.com
10
     Present (by telephone) for New England Power Company
11   f/k/a Montaup Electric Company; Borg Warner
     Corporation:
12       John R. Felice, Esq.
         Pierce Davis & Perritano, LLP
13       Ten Winthrop Square - 5th Floor
         Boston, Massachusetts 02110
14       617.350.0950 Fax 617.350.7760
         jfelice@piercedavis.com
15
16   Present for Pratt & Whitney:
         Richard A. Dean, Esq.
17       Tucker Ellis & West, LLP
         1150 Huntington Building
18       925 Euclid Avenue
         Cleveland, Ohio 44115
19       216.592.5000 Fax 216.592.5009
         rdean@tuckerellis.com
20
21
22
23
24

---

Page 227

1    ----------------------------------------
2              MORNING SESSION
3                  9:33 a.m.
4    ----------------------------------------
5            MAURICE R. LEVESQUE,
6    having been previously sworn on oath, was
7    examined and testified further as follows:
8              EXAMINATION
9    BY MS. YEE:
10       Q.   Good morning, Mr. Levesque.  My name is
11   Laura Yee; I introduced myself yesterday.
12            Are you feeling okay to continue with your
13   testimony today?
14       A.   Yes.
15       Q.   All right.  I want to remind you that
16   you're under oath and that means you have to tell
17   the truth to the best of your ability, to the best
18   of your memory, and that your testimony here today
19   is subject to penalty of perjury and has the same
20   force and effect as it would in front of a judge and
21   a jury.
22       A.   Yes.
23       Q.   Good.  I would also want to remind you, if
24   you could kindly wait for me to finish asking my

2 (Pages 224 to 227)

Page 232

1    Correct?
2         MR. SHEPARD: Objection.
3         A.   That is correct.
4         Q.   But you are claiming that you were exposed
5    to asbestos when you worked as a mechanic at
6    Gillette?
7         A.   Yes.
8         Q.   On the four aircraft, the Lockheed
9    Lodestar, the Learstar, and the two Gulfstreams?
10        A.   Correct.
11        Q.   Did you work on any other aircraft while
12   employed by Gillette?
13        A.   No.
14        Q.   Let's jump into the Lockheed Lodestar. I
15   understand that there was only one Lodestar at
16   Gillette?
17        A.   Correct.
18        Q.   When you first arrived on your first day
19   of work at Gillette, was that Lodestar there?
20        A.   Yes.
21        Q.   Was that Lodestar there throughout the
22   duration of your employment with Gillette?
23        A.   No. When we purchased our first
24   Gulfstream, we sold the Lodestar at that point.

Page 233

1         Q.   Do you recall who Gillette sold the
2    Lodestar to?
3         A.   No, I don't recall that.
4         Q.   What year was the Lodestar sold by
5    Gillette?
6         A.   I would estimate it was around 1959.
7         Q.   So you worked on the Lockheed Lodestar as
8    a mechanic periodically from 1956 through 1959?
9         A.   Correct.
10        Q.   Do you recall the month that you stopped
11   working on the Lodestar in 1959?
12        A.   No.
13        Q.   Can you tell me how often you worked as a
14   mechanic on the Lodestar during that approximate two
15   and a half, three-year period?
16        A.   That is very, very difficult to answer
17   that question. I really can't come up with
18   anything.
19        Q.   Okay, that's all right, sir. You also
20   flew the Lodestar. Correct?
21        A.   Correct.
22        Q.   Would it be fair to say that 60 percent of
23   your time on the Lodestar was spent flying it and 40
24   percent working as a mechanic?

Page 234

1         MR. SHEPARD: Objection.
2         A.   Again, I can't -- Can I explain something?
3         Q.   Sure.
4         A.   Usually coming back to Boston, the home
5    base, we had an ignition analyzer on the aircraft
6    and we used to do an ignition analyzer check, and
7    invariably we'd find something wrong, so we'd have
8    to spend the rest of the night working on the
9    engines one way or another.
10        Q.   That gets to a very good question, sir.
11   When you were employed by Gillette, were you working
12   at the Boston site the entire time or part of the
13   time?
14        A.   Boston site all the time.
15        Q.   All the time?
16        A.   Yes.
17        Q.   Now, you just mentioned and I couldn't
18   really understand, you mentioned there was something
19   wrong with the actuator. Is that what you said?
20        A.   No, no. In coming back to Boston home
21   base using the ignition analyzer, we were always
22   checking to see the operating condition of the
23   engines. Invariably we'd find something wrong that
24   we'd have to get organized at the hangar and start

Page 235

1    working, change clothes, put the coveralls on and go
2    to work. Okay?
3         Q.   All right, I understand what you're
4    saying.
5         Yesterday you testified that your
6    employment with Gillette was approximately 50
7    percent as a pilot and approximately 50 percent as a
8    mechanic. Is that your best estimate with respect
9    to the amount of time you spent on the Lodestar?
10        A.   Yeah, it could have been more either way.
11   I can't really bring it down any closer than that.
12   Okay?
13        Q.   So that's your best estimate, 50/50?
14        A.   Right.
15        Q.   Now, the Lockheed Lodestar that was at
16   Gillette, this is the twin-engine twin-tail midwing
17   monoplane that was originally constructed for the
18   United States Navy as an 18-seat paratroop
19   transport. Correct?
20        A.   Well, I don't know if it was for the Navy.
21   I know it was a Government aircraft at the time and
22   when it was purchased, I would have no idea when
23   Gillette purchased it or who they purchased it from.
24        Q.   Then let me break down my compound

4  (Pages 232 to 235)

Page 236

1  question. It is the twin-engine twin-tail midwing
2  monoplane?
3      A.  Correct.
4      Q.  And it is an aircraft that was originally
5  constructed for the United States military?
6      A.  Correct.
7      Q.  As an 18-seat paratroop transport?
8      A.  That I don't know.
9      Q.  Okay. Definitely a military aircraft?
10     A.  Right.
11     Q.  Constructed and used during World War II
12  combat?
13     A.  Yes.
14     Q.  Okay, fair enough.
15     A.  And the designation, if I remember
16  correctly, L-18 was the designation for that
17  aircraft.
18     Q.  L-18 is the model and the military
19  designation would either be R-50 or --
20     A.  I have no idea what the military
21  designation was.
22     Q.  Does C-60A sound familiar?
23     A.  No.
24     Q.  Do you recall any other number or letter

Page 237

1  designations besides L-18?
2      A.  No.
3      Q.  Do you happen to recall its tail number or
4  serial number?
5      A.  Sure.
6      Q.  Great. Give it to me.
7      A.  It was November, which is N, 15 GP, for
8  Gillette products.
9      Q.  That was the tail number of the aircraft
10  when the aircraft was acquired by Gillette?
11     A.  Yes, they bought the aircraft and they
12  requested that number and received that number for
13  the aircraft.
14     Q.  Right. And that happened in 1954.
15  Correct?
16     A.  I don't know — No, they already had it in
17  '53 when I arrived there. I'm sorry. In '56 when I
18  arrived there. I don't know when it was purchased.
19     Q.  All right. It's fair to say that you
20  understand that this aircraft was used in combat
21  during World War II but beyond that you don't know
22  its maintenance history?
23     A.  I have no idea if it went overseas. I
24  don't even know whether it was in active duty in

Page 238

1  combat at all.
2      Q.  Okay, no problem.
3      You had no involvement with the Lockheed
4  Lodestar when you were in the military, when you
5  were in the United States Air Force?
6      A.  No, no.
7      Q.  So that's correct?
8      A.  Correct.
9      Q.  All right. So it's fair to say, sir, that
10  you do not know the maintenance history of this
11  Lodestar prior to your work on it at Gillette?
12     A.  That's correct.
13     Q.  You would agree with me that it's safe to
14  assume that the Lockheed Lodestar underwent some
15  routine maintenance and overhaul pursuant to
16  military mandates during the time period that the
17  military owned it?
18     MR. SHEPARD:  Objection.
19     A.  I would assume so.
20     Q.  Sir, yesterday you testified that the
21  Lockheed Lodestar underwent some major conversions
22  in order for the aircraft to go from military use to
23  executive transport?
24     A.  No.

Page 239

1      Q.  You were talking about the Learstar at the
2  time?
3      A.  Yeah. The Lodestar remained a Lodestar.
4  Now, the Learstar originally was a Lodestar.
5      Q.  Right. And we'll talk about the
6  Learstar next.
7      A.  Okay, okay.
8      Q.  My point is that you would agree with me
9  that in order for a military aircraft to be
10  converted to a civilian executive transport, it has
11  to undergo some conversions and changes pursuant to
12  certificate types and all of the items listed that
13  need to be changed or modified pursuant to FAA
14  mandates. Correct?
15     A.  Correct.
16     Q.  This is not simply a cosmetic change?
17     A.  No.
18     Q.  Do you have any information or knowledge
19  with respect to the types of items that were removed
20  or changed on the Lodestar when it was converted
21  from a military aircraft to an executive transport?
22     A.  No.
23     Q.  Are you aware that this particular
24  Lodestar had approximately five owners after the

5 (Pages 236 to 239)

Maurice Levesque                Volume II                October 26, 2005

Page 260

1      A.   Disconnect the hydraulic lines and remove
2   the unit.
3      Q.   And when you removed the unit, you removed
4   the entire brake assembly unit as a single whole
5   unit.  Correct?
6      A.   Yes, yes.
7      Q.   And then you would put that unit on a cart
8   and take it somewhere else?
9      A.   Yes.
10     Q.   And the brake assembly unit would leave
11  the area that you were working in to be repaired
12  somewhere else?
13     A.   Sent to a repair station, yes.
14     Q.   It is fair to say that you never performed
15  any brake overhaul work on the braking systems of
16  the Lodestar.  Correct?
17     A.   That's correct.
18     Q.   That was done somewhere else outside of
19  your work area?
20     A.   Yes.
21     Q.   Now, you would also install a new brake
22  assembly.  Correct?
23     A.   New or overhauled, yes.
24     Q.   Right.  And you would do that in the same

Page 261

1   process that you removed it, just in reverse order.
2   Correct?
3      A.   Correct.
4      Q.   The brake assembly unit, the exterior of
5   it, is metal.  Correct?
6      A.   Yes.
7      Q.   And the bolts are all metal?
8      A.   Yes.
9      Q.   And I apologize if I asked you this.  Do
10  you recall the number of times you removed and
11  installed brake assembly units from the Lodestar?
12     A.   No.
13     Q.   Now, sir, the work that you did on the
14  Lodestar, did that take place outdoors on the flight
15  line or in a hangar or both?
16     A.   Both.
17     Q.   Please tell me the percentage of time that
18  you performed mechanical work to the Lodestar in a
19  hangar versus performing mechanical work to the
20  Lodestar outside?
21     A.   If we had anything that we had to
22  dismantle we did it internally.  If it was just
23  minor, minor maintenance of some kind, that would be
24  done outside at times.

Page 262

1      Q.   Are you able to give me a percentage like,
2   for instance, 50 percent in the hangar, 50 percent
3   outdoors?
4         MR. SHEPARD:  Objection.
5      A.   No.
6      Q.   Was there only one hangar at Gillette?
7      A.   Yes.
8      Q.   Please give me the approximate dimensions
9   of this hangar.
10     A.   I really don't remember how big that
11  hangar was.
12     Q.   Can you compare it to something like a
13  football field?
14     A.   No, it wasn't really that big.
15     Q.   Half of a football field?
16     A.   No.  Half?  Maybe half a football field.
17     Q.   Is that your best estimate?
18     A.   Yes.
19     Q.   How high were the ceilings?
20     A.   Approximately twenty -- about 24 feet
21  high.
22     Q.   And were there two large rollup doors or
23  push doors on both sides of the hangar?
24     A.   I believe they were push doors, to my best

Page 263

1   knowledge.
2      Q.   On both sides of the hangar?
3      A.   Yes.
4      Q.   Was there any type of ventilation system
5   in the hangar other than the natural ventilation
6   system of having the push doors open?
7         MR. SHEPARD:  Objection.
8      A.   No.
9      Q.   Were there windows in the hangar?
10     A.   There was glass in the doors.  Glass in
11  the doors.
12     Q.   On the push doors?
13     A.   Yes.
14     Q.   All right, sir.  You have told me about
15  your mechanical work on the Lodestar consisting of
16  removal and replacement of the gaskets and the
17  brakes.  Have you now told me about all of the ways
18  in which you believe you were exposed to asbestos
19  while working as a mechanic on the Lodestar?
20     A.   I believe that's all, yes, I believe it
21  is.
22     Q.   Very good.  I want to go to the next
23  aircraft of my concern, and that is the Learstar.
24  Now, you came to Gillette in 1956.  When you first

11 (Pages 260 to 263)

Maurice Levesque          Volume II          October 26, 2005

---

Page 264

1    arrived there, was the Learstar there?
2        A.    Yes.
3        Q.    And when you left in 1963, was the
4    Learstar there?
5        A.    No.
6        Q.    When did the Learstar leave Gillette's
7    possession?
8        A.    I think and if I'm correct, I believe that
9    it left somewhere around 1962, '61, '62.
10       Q.    Do you happen to recall the month --
11       A.    No, I do not.
12       Q.    -- when Gillette sold the Learstar?
13       A.    No, I do not.
14       Q.    Are you able to give me the percentage of
15    time -- Strike that.  Did you also fly the Learstar?
16       A.    Yes.
17       Q.    Are you able to give me the percentage of
18    time that you performed mechanical work to the
19    Learstar versus just flying the Learstar?
20       A.    Again, no, I can't.
21       Q.    Best estimate would be much like the
22    Lodestar, 50/50?
23       A.    Somewhere in that neighborhood.
24       Q.    Now, let's talk a little bit about the

---

Page 265

1    history of the Learstar.  As I understand it, this
2    too was originally constructed as a military
3    aircraft?
4        A.    Yes.
5        Q.    And used by the military until it was
6    converted into an executive transport?
7        A.    It was constructed as a Lodestar and when
8    it came out of the military to civilian use, whoever
9    purchased that plane had it converted by Bill Lear's
10    organization and converted it to a Learstar.  This
11    was comprised of removing all of the huge drag items
12    on the wings and streamlining the wings.  It
13    included making the wings full fuel cells, giving us
14    tremendous range.  It increased the speed of the
15    aircraft by approximately 80 knots.  And that's
16    about it.
17       Q.    Well, that's all you know of.
18       A.    Yes.
19       Q.    There were a lot of other items done to
20    the aircraft.
21           MR. SHEPARD:  Objection.
22       A.    Correct.
23       Q.    Again, in order for a military aircraft
24    such as this Lodestar which was later converted to a

---

Page 266

1    Learstar, in order for it to be used as a
2    nonmilitary aircraft there have to be many changes
3    and modifications done to it pursuant to the
4    certificate types mandated by the FAA.  Correct?
5            MR. SHEPARD:  Objection.
6        A.    Yes, correct.
7        Q.    This is the aircraft that you referred to
8    yesterday as undergoing major conversions before it
9    arrived to Gillette.  Correct?
10       A.    Correct.
11       Q.    Are you aware of the fact that this
12    aircraft was also owned and used by LAN, which is
13    Chile's national air carrier?
14       A.    I have no idea, no information on that.
15       Q.    Are you aware of the fact that this
16    aircraft before being acquired by Gillette was also
17    used by Cinta as a scheduled air carrier?
18       A.    No.
19       Q.    So it's fair to say you do not know the
20    maintenance history of this aircraft before it
21    arrived to Gillette?
22           MR. SHEPARD:  Objection.
23       A.    Correct.
24       Q.    Do you recall the flight hours that this

---

Page 267

1    aircraft had when it arrived to Gillette?
2        A.    No.
3        Q.    Do you remember its tail number?
4        A.    Yes.
5        Q.    Please give it to me.
6        A.    November 75 GP.
7        Q.    Again, GP for Gillette products?
8        A.    Yes.
9        Q.    And this is the tail number requested by
10    Gillette when the aircraft was acquired by Gillette?
11       A.    Correct.
12       Q.    Do you recall the year that it was
13    acquired by Gillette?
14       A.    No.
15       Q.    Do you agree with me that scheduled air
16    carriers undergo the highest standards of routine
17    maintenance and overhaul than any other type of
18    carrier?
19           MR. SHEPARD:  Objection.
20       Q.    By the mere fact that they are scheduled
21    air carriers of the public, such as Southwest and
22    United Air Lines.
23           MR. SHEPARD:  Objection.
24       A.    They have to meet certain checks.

12 (Pages 264 to 267)

Maurice Levesque          Volume II          October 26, 2005

Page 436

1        COURT REPORTER'S CERTIFICATE
2        I, J. Edward Varallo, Registered Professional
3    Reporter, Notary Public, and Licensed Shorthand
4    Court Reporter in the State of Connecticut (License
5    #431), hereby certify that the deposition of Maurice
6    R. Levesque taken on October 26, 2005, in the matter
7    of Michael Levesque, Executor of the Estate of
8    Pauline Levesque v. Amchem Products, Inc., et al.,
9    was recorded by me stenographically and transcribed;
10   and that the deponent's oath continued from the
11   previous day.
12        I certify that the deposition transcript
13   produced by me is true and accurate to the best of
14   my ability.
15        I certify further that I am not counsel,
16   attorney, or relative of any party litigant, and
17   have no interest, financial or otherwise, in the
18   outcome of this suit.
19
20
21
22
23   _____
24   DATED: 10/27/2005      J. Edward Varallo, RPR

Page 437

1    WITNESS:  Maurice R. Levesque       [Volume 2]
2    DATE:    October 26, 2005
3    CASE:    Michael Levesque, Executor of the Estate
4             of Pauline Levesque v. Amchem Products,
5             Inc., et al.
6
7    DISTRIBUTION TO COUNSEL  The original signature
8    page/errata sheet was sent to Michael C. Shepard,
9    Esq., to obtain signature from the deponent.  When
10   signed, please send original to Lawrence J.
11   Sugarman, Esq., who will supply a copy of the signed
12   errata sheet to other counsel present at the
13   deposition.
14
15   WITNESS INSTRUCTIONS  After reading the transcript
16   of your deposition, please note any change or
17   correction and the reason for it on the errata
18   sheet.  DO NOT make any notations on the transcript
19   itself.  Use additional sheets if necessary.
20
21   SIGN AND DATE THE ERRATA SHEET and return it, along
22   with the transcript, to your counsel.
23
24

Page 438

1
2                    I N D E X
3    _____
4    DEPONENT                      PAGE
5    _____
6    Maurice R. Levesque
7      by Ms. Yee.................. 227, 293, 415
8      by Mr. Tabasky ............. 287
9      by Ms. Lynch................ 295, 416
10     by Ms. Mackler.............. 314, 417
11     by Mr. Ruggleri............. 366
12     by Mr. Dean................. 424, 432
13     by Mr. Weigand ............. 426
14     by Mr. Sugarman............. 429
15     by Mr. Shepard.............. 431, 433
16
17
18   (THERE WERE NO EXHIBITS MARKED FOR IDENTIFICATION.)
19
20
21
22
23
24

# EXHIBIT 6

FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
2005 OCT 31 P 4: 05

FOR THE DISTRICT OF MASSACHUSETTS
U.S. DISTRICT COURT
DISTRICT OF MASS.

MICHAEL LEVESQUE, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
PAULINE LEVESQUE,

CASE NO. **05-12184WGY**

Plaintiffs,

v.

(Middlesex Superior Court,
County of Middlesex,
Case No. 02-5427)

AMCHEM PRODUCTS INC., ET AL., MAGISTRATE JUDGE _____

Defendants.

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____

**LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C. § 1442(a) (FEDERAL OFFICER)**

BY DPTY. CLK. _____
DATE _____

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendant Lockheed Martin
Corporation ("Lockheed Martin") hereby files its Notice of
Removal of the state court action filed by Plaintiff Michael
Levesque, personal representative of the estate of Pauline
Levesque, described below to this Court pursuant to 28 U.S.C. §
1442(a):

I.   **BACKGROUND**

1.   On or about February 22, 2005, Plaintiff brought the
action entitled *Michael Levesque, Personal Representative of the
Estate of Pauline Levesque v. Amchem Products, Inc. et al.,* in
the Middlesex Superior Court of the Commonwealth of
Massachusetts for the County of Middlesex, Case No. 02-5427.  A
true and correct copy of the Summons and Plaintiff's Motion For
Leave of Court To Amend the Complaint to Add Party Defendants

("Complaint") is attached hereto as "Exhibit A." A true and correct copy of the Plaintiff's Second Amended Disclosure Form is attached hereto as "Exhibit B." A true and correct copy of the Plaintiff's Third Amended Complaint is attached hereto as "Exhibit C." The Complaint was served via personal service on Lockheed Martin on March 18, 2005, while the Second Amended Disclosure Form was posted electronically on the Massachusetts State Court Asbestos Docket on February 22, 2005.[1]

2. Plaintiff sues more than fifty-five (55) separate defendants and alleges that decedent was secondarily exposed to asbestos as a child from 1929 to 1949 through daily contact with her father, a former electrical power plant worker. He also alleges that decedent was secondarily exposed from 1949 to 1959 through daily contact with her ex-husband, a former civilian aircraft mechanic. The only information contained in the Complaint, Third Amended Complaint, and Second Amended Disclosure Form concerning potential Lockheed Martin-related exposure is a reference to decedent's ex-husband's employment as an "aircraft mechanic" for "[v]arious airlines including, but not limited to Northwest Airlines" at "New Bedford Airport, Fall River Airport and Logan Airport." *See* Exhibit B, page 21.

3. On October 25 and 26, 2005, decedent's ex-husband, Maurice Levesque, was deposed in Danbury, Connecticut. Maurice

---

[1] On October 18, 2005, plaintiffs moved to amend their complaint to change the name of defendant Lockheed Martin Corporation to defendant Lockheed Martin Corporation, as successor in interest to Loral Corporation and Goodyear Aerospace Corporation. A true and correct copy of plaintiffs' motion is attached as "Exhibit D."

Levesque testified that, between 1949 and 1992, he was exposed
to asbestos while working on numerous non-Lockheed Martin
aircraft and aircraft engines while attending Alan Airways pilot
and aircraft mechanic school (1948-1950) and while employed as
an aircraft mechanic by several civilian airlines (1951-1992).
He also testified that he was exposed to asbestos while working
on two Lockheed Martin aircraft, the "Lodestar" (periodically
1956-1959) and the "Learstar" (periodically 1956-1961 or 1962)
while working as an aircraft mechanic for Gillette Corporation.
Mr. Levesque testified that both of these Lockheed Martin
aircraft originally were World War II military aircraft that
were converted to civilian use prior to Gillette's acquisition
of them. *See* Maurice Levesque deposition transcript at 235:15-
236:13; 263:22-265:4, attached to this Notice as "Exhibit E."[2]
As such, these aircraft originally were manufactured by Lockheed
Martin in accordance with detailed specifications approved by
the United States government and under the direct supervision,
control, orders and directives of a federal officer acting under
color of federal office.

4.     Neither the Complaint, the Third Amended Complaint,
nor the Second Amended Disclosure Form, described in paragraphs
1 and 2 above, provided notice of an appropriate basis for
removal of this case.  Plaintiff has served no other process,

---

[2] Plaintiff's counsel requested 30 days for the witness to
   review and sign the deposition transcript. *See* Maurice
   Levesque deposition transcript at 133:11-133:17.
   Therefore, in order to remove this case within the
   statutory timeframe, Lockheed Martin attaches pages from
   the Court Reporter's certified transcript.

3

pleading, motion, order, or other paper in this matter providing notice of an appropriate basis for removal as of the date of filing this Notice of Removal.

5. Maurice Levesque's deposition described in paragraph 3 above is the first pleading, motion, order, or other paper from which it could be ascertained that plaintiff's action properly should be removed to this Court.

6. This Notice of Removal is being filed within 30 days of the time Lockheed Martin first received notice, via the deposition of Maurice Levesque, of the grounds for removal of this case. This removal is therefore filed within the time period prescribed by law. *See* 28 U.S.C. § 1446(b).

7. This action is one which may be removed to this Court by Lockheed Martin on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a).

## II. **FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C. § 1442(a)**

8. Removal is proper under 28 U.S.C. § 1442(a) when (a) the defendant seeking removal demonstrates that it is a "person" within the meaning of the statute; (b) the defendant demonstrates a causal nexus between the defendant's actions, taken pursuant to a federal officer's directions and under color of federal office, and the plaintiff's claims; and (c) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989).

9. Lockheed Martin is a "person" within the meaning of 28 U.S.C. § 1442(a). *Green v. A.W. Chesterton Co.,* 366 F. Supp. 2d 149, 153 n.3 (D. Me. 2005); *see also Winters v. Diamond Shamrock*

4

*Chem. Co.,* 149 F.3d 387, 398 (5th Cir. 1998)(holding corporate entities qualify as "persons" under § 1442(a)(1)); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

10.  Plaintiff bases his claims against Lockheed Martin on alleged exposure to asbestos by Maurice Levesque while working with Lockheed Martin "Lodestar" and "Learstar" aircraft on and off between 1956 and 1961/2. These aircraft were originally manufactured by Lockheed Martin's predecessor as World War II military aircraft. To the extent that the design or manufacture of these aircraft included asbestos-containing parts or components, such inclusion was explicitly and directly required by the United States Government in its detailed and precise specifications through and under the direction of the Secretaries of the Departments of Defense, United States Army Air Force and United States Navy. Any decision regarding asbestos in these aircraft or the component parts thereof was under the full control and discretion of the United States Government. *See Green*, 366 F. Supp. 2d at 155-157 *citing Freiberg v. Swinerton & Walberg Prop. Servs.*, 245 F. Supp. 2d 1144 (D. Co. 2002).

11.  Lockheed Martin asserts a colorable federal defense, namely the government contractor defense. *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988); *see Green*, 366 F. Supp. 2d at 154; *Fung*, 816 F. Supp. at 573. *Boyle* establishes that a government contractor is not liable for injuries caused by design defects in equipment when the contractor built such equipment according to reasonably precise Government-approved design specifications. The government contractor defense is

5

satisfied here because the design specifications for these aircraft were Government-approved, the aircraft conformed to these specifications, and, to the extent that asbestos was known at the time to be a hazardous material, the Government's knowledge of such hazards was superior to the knowledge of Lockheed Martin.

12. In addition, Lockheed Martin is entitled to federal officer removal under 28 U.S.C. § 1442(a) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940); *see also City of Worcester v. HCA Management Co., Inc.,* 753 F. Supp. 31, 37 (D. Mass. 1990). *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract. The *Yearsley* doctrine is satisfied here because the acts complained of were performed at the direction of Government officers acting pursuant to Government authorization and if the Government had performed these acts directly, it would be immune from suit.

## IV. PROCEDURAL COMPLIANCE

13. Because Lockheed Martin satisfies the requirements for removal under 28 U.S.C. § 1442(a), it is entitled to remove this entire action. Joinder of the other defendants in this action is not necessary to remove under 28 U.S.C. § 1442(a). *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F. 2d 1310, 1314 (9th Cir. 1981).

14. Lockheed Martin filed an Acknowledgment of Service ("Answer") in the Middlesex Superior Court of Massachusetts,

6

Middlesex County on September 21, 2005. A true and correct copy
of Lockheed Martin's Answer is attached hereto as "Exhibit F."

15. Lockheed Martin will comply with Local Rule 81.1 and
give notice of the filing of this Notice as required by
28 U.S.C. § 1446(d).

**WHEREFORE,** Lockheed Martin requests that this action proceed
in this Court as a properly removed action.

                                        THE DEFENDANT,
                                        LOCKHEED MARTIN
                                        CORPORATION,
                                        By their Counsel,

                                        Nancy Kelly
                                        BBO# 543972
                                        Lawrence J. Sugarman
                                        BBO# 567910
                                        CETRULO & CAPONE LLP
                                        Two Seaport Lane
                                        Boston, MA 02210
                                        (617) 217-5500

DATED: October $\frac{3}{1}$, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this $\frac{3}{1}$ day of October, 2005 I
have served a copy of the foregoing, via electronic service to
all known Counsel of Record.

                                        Nancy Kelly

DATED: October $\frac{3}{1}$, 2005

7

# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
MICHAEL LEVESQUE, EXECUTOR OF THE  )
ESTATE OF PAULINE LEVESQUE,        )
    Plaintiff,                     )
                                   )
    v.                             )   Civ. No. 05-12184-NG
                                   )
AMCHEM PRODUCTS, INC., et al.,      )
    Defendants.                    )
_____
GERTNER, D.J.:

### ORDER OF SEVERANCE AND REMAND

    Defendant Lockheed Martin Corporation is hereby severed from the above-captioned case.  The action against Lockheed Martin will remain before this Court and Lockheed will be permitted to assert its cognizable federal claims.  The action against the remaining defendants is hereby **REMANDED** to the Middlesex Superior Court Department of the Massachusetts Trial Court, pursuant to Federal Rule of Civil of Procedure 21, in the interest of justice.


SO ORDERED.

Date:  December 2, 2005    /s/NANCY GERTNER, U.S.D.J.